1  Jeffrey A. Katz, SBN 010317
   Zachary Dorn, SBN 031018
2  COMMUNITY LEGAL SERVICES
   305 South 2nd Avenue
3  Phoenix, Arizona 85003-2402
   (602) 258-3434, Ext. 2210
4  (602) 254-3957 FAX
   E-Mail: jkatz@clsaz.org
5          zdorn@clsaz.org

6  *Attorneys for Plaintiff*

7  **IN THE UNITED STATES BANKRUPTCY COURT**

8  **FOR THE DISTRICT OF ARIZONA**

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

| | |
|---|---|
| 9 In re: | CHAPTER 7 PROCEEDINGS |
| 10 RUBEN DIAZ, | Case No. 2:16-bk-08654-MCW |
| 11 Debtor. | Adversary Case No. 2:17-ap-00002 |
| 12 ARIEL GUERRERO LOPEZ and ALMA LOPEZ, separately and as husband and wife, | **ADVERSARY COMPLAINT** |
| 13 | **(Non-dischargeability)** |
| 14 Plaintiff, | |
| v. | |
| 15 RUBEN DIAZ, | |
| 16 Defendant. | |

17        Plaintiffs, ARIEL GUERRERO LOPEZ and ALMA LOPEZ ("Plaintiffs"), by and

18  through her undersigned counsel, files the following Complaint against Defendant,

19  RUBEN DIAZ ("Defendant"):

20                        **INTRODUCTION**

21        This is an action to determine non-dischargeability of a debt resulting from

22  damages that Plaintiff suffered as a direct result of the Defendant's false representations,

23  defalcation, common law fraud and violations of the Arizona Consumer Fraud Act.  Most

24  notably, Plaintiffs suffered economic harm by Defendant misrepresenting his ability to

25  prevent Plaintiffs' home from being foreclosed and by violating state statutes designed to

26  protect consumers.

27

28  *///*

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

## PARTIES

1.  Plaintiffs are husband and wife who reside in Maricopa County and are creditors in this case.

2.  Plaintiffs owned and resided in 4219 N. 99th Lane, Phoenix, AZ 85037, (the "Property"), the property subject to dispute in this case.

3.  The subject Property is located in Maricopa County, Arizona.

4.  Defendant Ruben Diaz is a natural person and resides at 7401 E. Cambridge Ave., Scottsdale, AZ 85257. Defendant is the sole member and manager of Rancho Grande, LLC. At all times relevant to the claims asserted herein, Defendant conducted business in Arizona and caused events to occur in Maricopa County, out of which such claims arose.

5.  At all times relevant to the claims asserted herein, Defendant has never been a licensed real estate professional in the State of Arizona.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

7.  This adversary proceeding is brought pursuant to 11 U.S.C. § 523 and Fed.R.Bank.P. 4004, 4007, and 7001.

8.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

9.  Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).

## FACTS

10. On September 4, 2001, Loren and Barbara Stafford conveyed the Property to Ariel Lopez. See Warranty Deed attached as Exhibit 1. Alma Lopez disclaimed any interest in the Property. See Disclaimer Deed attached as Exhibit 2.

11. On September 4, 2001, the Lopezes took possession and lived in of the Property.

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

12.    On August 21, 2001 Ariel Guerrero Lopez (as Trustor) signed a Deed of Trust in favor of Concord Mortgage Company (as Beneficiary), an Arizona corporation. See Deed of Trust attached as Exhibit 3.

13.    On August 28, 2003, Ariel Guerrero Lopez refinanced by signing (as Trustor) a new Deed of Trust in favor of Bank One, N.A. (as Beneficiary).  See Deed of Trust attached as Exhibit 4.

14.    September 23, 2005, Ariel Guerrero Lopez refinanced by signing (as Trustor) a new Deed of Trust in favor of World Savings Bank, FSB (as Beneficiary).  See Deed of Trust attached as Exhibit 5.

15.    June 10, 2009, Beneficiary caused to be recorded a Notice of Trustee's Sale for a sale to be held on September 10, 2009.  See Notice of Trustee's Sale attached as Exhibit 6.

16.    September 1, 2009, Trustee's Sale was canceled.  See Cancellation of Trustee's Sale attached as Exhibit 7.

17.    February 7, 2012, Trustee recorded a second Notice of Trustee's Sale for a sale to be held on May 10, 2012.  See Notice of Trustee's Sale attached as Exhibit 8.

18.    In May 2012, Atlantico approached Plaintiffs with an offer to assist them in saving their home from foreclosure.

19.    Plaintiffs and Atlantico reached a verbal agreement where Plaintiffs would short sell the Property to Atlantico, Atlantico would cause the pending Trustee's Sale to be cancelled, and then Plaintiffs would repurchase the Property from Atlantico.  Plaintiffs and Atlantico execute a written agreement to formalize Plaintiffs' repurchase of the Property signed on August 17, 2012.  The purchase contract provided for a twenty thousand four hundred dollar ($20,400.00) down payment with seller carryback financing for forty seven thousand six hundred dollars ($47,600.00).  See Contract ("Purchase Contract") attached as Exhibit 9.

20.    Pursuant to the above referenced agreement, Plaintiffs short sold the Property to Atlantico.  July 13, 2012, Wells Fargo (as successor to World Savings Bank, FSB) approved the short sale (see Short Sale Approval attached as Exhibit 10), and the short

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

sale was completed.  See Warranty Deed from July 31, 2012 attached as Exhibit 11; see also HUD-1 Statement attached as Exhibit 12.

21.    Pursuant to the Purchase Contract (for Plaintiffs to repurchase the Property), on July 30, 2012, Plaintiffs paid Atlantico twenty thousand four hundred dollars ($20,400.00).  A copy of the receipt showing payment of the $20,400.00 is attached as Exhibit 13.

22.    On or about July 30, 2012 Plaintiffs commenced monthly payments to Atlantico under the Purchase Contract to repurchase the Property.

23.    July 31, 2012, Atlantico (as Trustor) signs Deed of Trust against the Property in favor of David and Sharon Pace 1999 Revocable Living Trust dated June 25, 1999 (as Beneficiary) for fifty-three thousand dollars ($53,000.00). See Deed of Trust attached as Exhibit 14.  This transaction was never discussed with, disclosed to or approved by the Plaintiffs.

24.    June 27, 2013, Atlantico (as Trustor) refinanced the July 31, 2012 Deed of Trust by signing two Deeds of Trust in favor of CTP Funding, LLC (as Beneficiary), an Arizona limited liability company.  One Deed of Trust was for fifty nine thousand, five hundred dollars ($59,500.00).  See Deed of Trust attached as Exhibit 15.  The second Deed of Trust was for five thousand, one hundred and twenty four dollars ($5,124.00). See Deed of Trust attached as Exhibit 16.  These transactions were never discussed with, disclosed to or approved by the Plaintiffs.

25.    Plaintiffs continued to make monthly payments to Atlantico under the Purchase Contract.  However, Atlantico did not make payments to CTP Funding, LLC on the Deeds of Trust.

26.    November 6, 2013, Beneficiary CTP Funding, LLC caused to be recorded Notice of Trustee's Sale pursuant to second Deed of Trust for $5,124.00.  See Notice of Trustee's Sale attached as Exhibit 17.

27.    After the Notice of Trustee's Sale was recorded, Plaintiffs were approached by Ruben Diaz of Rancho Grande.

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

28. Defendant verbally represented that he could provide financing through Rancho Grande to prevent the foreclosure, if the Plaintiffs paid Rancho Grande three thousand dollars ($3,000.00).

29. Atlantico agreed to assign the verbal agreement and the Purchase Contract (for Plaintiffs to repurchase the Property) to Rancho Grande in order to allow Defendant to prevent the foreclosure of the Property.

30. Plaintiffs paid Rancho Grande three thousand dollars ($3,000.00).

31. Pursuant to the assignment of the verbal agreement and the Purchase Contract (for Plaintiffs to repurchase the Property), on November 12, 2013. Atlantico conveyed the Property to Rancho Grande. See Special Warranty Deed attached as Exhibit 18.

32. November 13, 2013, Alma Lopez signed a one page document that purported to authorize Atlantico to convey title to Rancho Grande and assign the agreement between the Lopezes and Atlantico to Rancho Grande. See Rancho Grande Document attached as Exhibit 19.

33. November 13, 2013, Camelback Phoenix Partners LP obtained a money judgment Atlantico. See Money Judgment attached as Exhibit 20.

34. February 7, 2014, the Property was sold at the Trustee's Sale pursuant to June 27, 2013 Deed of Trust. See Exhibit 16.

35. At the time of the Trustee's Sale, the approximate value of Property was one hundred forty-four thousand dollars ($144,000.00).

36. March 17, 2014, Statewide Foreclosure Services (as Trustee) filed an excess proceeds case in the Superior Court of Maricopa County (case number CV2014-052632) pursuant to A.R.S. § 33-812 and deposited twenty-six thousand, four hundred and seventy-two dollars ($26,472.00) with the Maricopa County Treasurer.

37. March 28, 2014, Camelback Phoenix Partners filed an Application for Distribution of Excess Proceeds.

38. May 19, 2014, Lopezes filed a Response to Application for Release of Excess Proceeds.

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

39. On December 11, 2014, Lopezes and Camelback Phoenix Partners reached a settlement agreement to divide the excess proceeds. The Lopezes received fourteen thousand, two hundred and thirty-six dollars and eight-five cents ($14,236.85) with the remaining balance going to Camelback Phoenix Partners.

40. On November 21, 2016, Plaintiffs filed a Complaint in the Superior Court in Cause No. CV2016-017392 in the Superior Court of Arizona, in and for Maricopa County. A copy of the Complaint is attached as Exhibit 21.

41. On December 19, 2016 Defendant's attorney notified Plaintiffs' attorney of this bankruptcy case. Prior to December 19, 2016 Plaintiffs had no notice of Defendant's bankruptcy.

## CAUSES OF ACTION

### COUNT I

#### (Section 523(a)(2)(A))

42. Plaintiffs incorporate and reallege the foregoing paragraphs as if fully set forth herein.

43. Defendant represented that that financing would be provided through Rancho Grande to prevent the Property from being foreclosed.

44. Defendant knew his representations were false and acted with a reckless disregard to the truth of representations.

45. The Defendant made the false representations with the intent to deceive.

46. The Defendant intended the Plaintiffs to act on the representations and requested three thousand dollars ($3,000.00), which the Plaintiffs paid.

47. Defendant's false representations were material to the Plaintiff's decision to make the payment requested by the Defendant and convey the Property to Rancho Grande.

48. Plaintiff believed Defendant's false representations, did not know they were false, and reasonably relied on them.

49. The Plaintiffs were damaged because they agreed to allow Atlantico to assign

the agreement and convey the Property to Rancho Grande, gave three thousand dollars ($3,000.00) to the Defendant, and they lost the equity in the property.

50. The Defendant's actions constitute Fraud and the claim is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A)

## COUNT II

### (Section 523(a)(6))

51. Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

52. Defendant willfully and maliciously financially injured Plaintiff.

53. Defendant met with Plaintiffs and agreed to perform acts to prevent the foreclosure of the Property as set forth fully in Count I above.

54. Defendant charged Plaintiff $3,000.00 to prevent the foreclosure of the Property.

55. Defendant took no action in furtherance of preventing the foreclosure of the Property.

56. Defendant never intended to prevent the foreclosure of the Property.

57. Defendant knew that Plaintiffs would suffer seriously financial harm by Defendant's failure to prevent the foreclosure.

58. Defendant's failure to perform the agreed upon foreclosure prevention service caused economic harm to Plaintiffs.

59. Plaintiffs' economic injuries were the proximate result of Defendant's actions because Defendant intentionally failed to prevent the foreclosure, a duty for which Defendant was paid, and then Plaintiffs' Property was foreclosed on and Plaintiffs suffered the economic loss of the equity of their Property.

60. Because Defendant willfully and maliciously financially injured Plaintiffs, this debt is not dischargeable under 11 U.S.C. §§ 523(a)(6).

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court enter Judgment against Defendant as follows:

A.   For a determination that Plaintiffs have been injured by the Defendant's acts and omissions in an amount to be determined at trial, to include the $3,000.00 paid to Debtor plus the loss of equity in the Property;

B.   For a determination by this Court that the above referenced a debt is not dischargeable in bankruptcy under section 523(a)(2)(A);

C.   For a determination by this Court that the above referenced debt is not dischargeable in bankruptcy under section 523(a)(6);

D.   Such other and further relief as the Court deems just and proper.

**DATED** this 3rd day of January 2017

COMMUNITY LEGAL SERVICES

By      */s/ Zachary Dorn*
Zachary Dorn
*Attorney for Plaintiff*

The original Complaint to Determine Non-Dischargeability of Debt was e-filed this 3rd day of January 2017, with:

United States Bankruptcy Court
District of Arizona

By  */s/ Karen L. McGettrick*

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

## INDEX OF EXHIBITS

| | |
|---|---|
| **Exhibit 1** | September, 2001 Warranty Deed |
| **Exhibit 2** | September, 2001 Disclaimer Deed |
| **Exhibit 3** | 2001 Concord Mortgage Deed of Trust |
| **Exhibit 4** | 2003 Bank One, N.A. Deed of Trust |
| **Exhibit 5** | 2005 World Savings Bank, FSB Deed of Trust |
| **Exhibit 6** | June 10, 2009 Notice of Trustee's Sale |
| **Exhibit 7** | September 1, 2009 Cancellation of Trustee's Sale |
| **Exhibit 8** | February 7, 2012 Notice of Trustee's Sale |
| **Exhibit 9** | August 17, 2012 Contract |
| **Exhibit 10** | Short Sale Approval |
| **Exhibit 11** | July 31, 2012 Warranty Deed |
| **Exhibit 12** | HUD-1 Statement |
| **Exhibit 13** | Receipt for payment of $20,400.00 |
| **Exhibit 14** | July 31, 2012 Deed of Trust |
| **Exhibit 15** | June 27, 2013 Deed of Trust |
| **Exhibit 16** | June 27, 2013 Deed of Trust |
| **Exhibit 17** | November 6, 2013 Notice of Trustee's Sale |
| **Exhibit 18** | Special Warranty Deed |
| **Exhibit 19** | Rancho Grande Document |
| **Exhibit 20** | Money Judgment |
| **Exhibit 21** | CV2016-017392 Complaint |

# Exhibit 1

# Warranty Deed



**RECORDING REQUESTED BY:**
Westland Title Agency Of Arizona

**AND WHEN RECORDED MAIL TO:**
ARIEL GUERRERO LOPEZ

**4219 N. 99th Lane**
**Phoenix, AZ 85037**

Escrow No. 01-00649-01

(1-3)

This area reserved for County Recorder

# WARRANTY DEED

For the consideration of Ten Dollars, and other valuable considerations, I or we,

**Loren M. Stafford and Barbara A. Stafford, husband and wife as community property with right of survivorship**

do/does hereby convey to

**ARIEL GUERRERO LOPEZ, husband of ALMA A. LOPEZ, as his sole and separate property**

the following real property situated in **Maricopa** County, **Arizona**:

Lot 30, KAUFMAN AND BROAD AT THE VINEYARDS, according to the plat recorded in Book 377 of Maps, page 50, records of Maricopa County, Arizona and Affidavit of Correction recorded June 20, 1994 in 94-482074 of Official Records.

SUBJECT TO: Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations, and liabilities as may appear of record.

And I or we do warrant the title against all persons whomsoever subject to the matters set forth above.

Dated: September 4, 2001

_____
Loren M. Stafford

_____
Barbara A. Stafford

STATE OF      ARIZONA      )
                          ) SS.
COUNTY OF  MARICOPA   )

OFFICIAL SEAL
UDELIA LUNA
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Feb. 10, 2002

This instrument was acknowledged before me this _____ day of _____ September _____ 2001
by ___LOREN M. STAFFORD & BARBARA A. STAFFORD___

My Commission Expires: _Feb 10, 2002_

_____
Notary Public

# Exhibit 2

# Disclaimer Deed



# Unofficial Document

MA...._.. .....  ...._...  .._..._.
HELEN PURCELL
2001-0831028   09/10/2001   11:03
YEZENIA

**RECORDING REQUESTED BY:**
Westland Title Agency Of Arizona

**AND WHEN RECORDED MAIL TO:**
Ariel Guerrero Lopez
4219 N. 99th Lane
Phx, Az 85037

Order No. _ 01-00649-01
Escrow No. 01-00649-01

$\langle\mathcal{Q}-3\rangle$

This area reserved for County Recorder

## DISCLAIMER DEED

WITNESSETH THIS DISCLAIMER DEED, made by ALMA A. LOPEZ

hereinafter called "the undersigned" to ARIEL GUERRERO-LOPEZ

hereinafter called "the spouse"

WHEREAS:
1. The spouse has acquired title to the following described property situated in **Maricopa** County, State of **AZ**, to-wit:

     SEE LEGAL DESCRIPTION ATTACHED

2. The property above described is the sole and separate property of the spouse having been purchased with separate funds of the spouse.
3. the undersigned has no present right, title, interest, claim or lien of any kind or nature whatsoever in, to or against said property. This instrument shall also constitute a waiver, by the undersigned, in favor of any mortgagee, deed of trust beneficiary or deed of trust trustee of any right to file a declaration or claim of homestead affecting the above described property.
4. This instrument is executed not for the purpose of making a gift to the spouse, but solely for the purpose of clearly showing of record that the undersigned has and claims no interest in and to said property, the undersigned expecting third persons to rely on this disclaimer.

NOW, THEREFORE, in consideration of the premises, the undersigned does hereby disclaim, remise, release and quitclaim unto the spouse and to the heirs and assigns of said spouse forever, all right, title, interest, claim and demand which the undersigned might appear to have in and to the above described property.

Dated this August 28, 2001.

Alma A Lopez
ALMA A. LOPEZ

STATE OF       ARIZONA        )
                             ) SS.
COUNTY OF   MARICOPA    )
On _August 28th, 2001_____ before me, the undersigned Notary Public, personally appeared
ALMA A. LOPEZ
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

My Commission Expires _Feb 10, 2002_

Notary Public

## LEGAL DESCRIPTION
## EXHIBIT "A"

Lot 30, KAUFMAN AND BROAD AT THE VINEYARDS, according to the plat recorded in Book 377 of Maps, page 50, records of Maricopa County, Arizona and Affidavit of Correction recorded June 20, 1994 in 94-482074 of Official Records.

Unofficial Document

# Exhibit 3

# 2001 Concord Mortgage Deed of Trust



# Unofficial Document

MA............. ........ .......... ........
HELEN PURCELL
2001-0831028    09/10/2001    11:03
YEZENIA

**RECORDING REQUESTED BY:**
Westland Title Agency Of Arizona

**AND WHEN RECORDED MAIL TO:**
Ariel Guerrero Lopez
4219 N. 99th Lane
Phx, Az 85037

Order No. .01-00649-01
Escrow No. 01-00649-01

(2-3)

This area reserved for County Recorder

# DISCLAIMER DEED

WITNESSETH THIS DISCLAIMER DEED, made by ALMA A. LOPEZ

hereinafter called "the undersigned" to ARIEL GUERRERO-LOPEZ

hereinafter called "the spouse"

WHEREAS:

1. The spouse has acquired title to the following described property situated in **Maricopa** County, State of **AZ**, to-wit:

   SEE LEGAL DESCRIPTION ATTACHED

2. The property above described is the sole and separate property of the spouse having been purchased with separate funds of the spouse.

3. the undersigned has no present right, title, interest, claim or lien of any kind or nature whatsoever in, to or against said property. This instrument shall also constitute a waiver, by the undersigned, in favor of any mortgagee, deed of trust beneficiary or deed of trust trustee of any right to file a declaration or claim of homestead affecting the above described property.

4. This instrument is executed not for the purpose of making a gift to the spouse, but solely for the purpose of clearly showing of record that the undersigned has and claims no interest in and to said property, the undersigned expecting third persons to rely on this disclaimer.

NOW, THEREFORE, in consideration of the premises, the undersigned does hereby disclaim, remise, release and quitclaim unto the spouse and to the heirs and assigns of said spouse forever, all right, title, interest, claim and demand which the undersigned might appear to have in and to the above described property.

Dated this August 28, 2001.

*Alma A Lopez*
ALMA A. LOPEZ

STATE OF      ARIZONA      )
                                              ) SS.
COUNTY OF    MARICOPA    )
On *August 28th, 2001*      before me, the undersigned Notary Public, personally appeared
ALMA A. LOPEZ
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

My Commission Expires *Feb 10, 2002*

*[signature]*

Notary Public

# LEGAL DESCRIPTION
## EXHIBIT "A"

Lot 30, KAUFMAN AND BROAD AT THE VINEYARDS, according to the plat recorded in Book 377 of Maps, page 50, records of Maricopa County, Arizona and Affidavit of Correction recorded June 20, 1994 in 94-482074 of Official Records.

Unofficial Document

# Exhibit 4

# 2003 Bank One, N.A. Deed of Trust

STEWART TITLE & TRUST OF PHOENIX

Return To:
**Bank One, N.A.**

**10300 Kincaid Drive,
IN1-9030, Fishers, IN   46038**

Prepared By:
**Bank One, N.A.**

**514 South Main Street,
Findlay, OH 45840**

11 00001628·021

————[Space Above This Line For Recording Data]————

# DEED OF TRUST

MIN **100015000137576790**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **August 28, 2003** ,
together with all Riders to this document.
**(B) "Borrower"** is **Ariel Guerrero Lopez, a married man as his sole and separate property.**

Borrower is the trustor under this Security Instrument. Borrower's mailing address is **4219 N. 99th Lane, Phoenix, AZ 85037**
**(C) "Lender"** is **Bank One, N.A.**

Lender is a **Corporation**
organized and existing under the laws of **The United States of America**                                                .

13757679

**ARIZONA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**   Form 3003  1/01 (rev. 6/02)

**VMP** -6A(AZ) (0206)
Page 1 of 15                                    Initials: A.G.L.
   VMP MORTGAGE FORMS - (800)521-7291

Lender's mailing address is **10300 Kincaid Dr., Suite IN1-9032, Fishers, IN 46038**

**(D) "Trustee"** is **Arizona Trust Deed Corporation, an Arizona Corp.**
. Trustee's mailing address is
**P.O. Box 71, Department A-358, Phoenix, AZ 85001**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **August 28, 2003**.
The Note states that Borrower owes Lender **Ninety-Six Thousand Eight Hundred and No/100** Dollars
(U.S. $**96,800.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **September 01, 2033**.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] VA Rider
- [ ] Condominium Rider
- [x] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] 1-4 Family Rider
- [ ] Other(s) [specify]

Unofficial Document

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

13757679

-6A(AZ) (0206)     Page 2 of 15     Initials: _A.G.L._    Form 3003 1/01 (rev. 6/02)

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
**County** of **Maricopa** :
       [Type of Recording Jurisdiction]         [Name of Recording Jurisdiction]

**Lot 30, Kaufman and Broad At the Vineyards, according to Book 377 of Maps, Page 50, and Affidavit of Correction recorded June 20, 1994 in Document No. 94-482074, records of Maricopa County, Arizona**

Unofficial Document

Parcel ID Number: **102-82-798**          which currently has the address of
**4219 N. 99th Lane**                             [Street]
**Phoenix**              [City], Arizona **85037**      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

13757679

Initials: A.G.L.

VMP®-6A(AZ) (0206)                Page 3 of 15                         Form 3003   1/01 (rev. 6/02)

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Case 2:17-ap-00002-MCW  Doc 1  Filed 01/03/17  Entered 01/03/17 13:05:11  Desc
Main Document  Page 23 of 134

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Case 2:17-ap-00002-MCW  Doc 1  Filed 01/03/17  Entered 01/03/17 13:05:11  Desc
Main Document  Page 25 of 134

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Case 2:17-ap-00002-MCW   Doc 1   Filed 01/03/17   Entered 01/03/17 13:05:11   Desc
Main Document     Page 26 of 134

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

13757679

Initials: _A G L_.

-6A(AZ) (0206)     Page 9 of 15     Form 3003  1/01 (rev. 6/02)

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

13757679

Initials: A.G.L.

-6A(AZ) (0206)        Page 10 of 15        Form 3003  1/01  (rev. 6/02)

Case 2:17-ap-00002-MCW    Doc 1    Filed 01/03/17    Entered 01/03/17 13:05:11    Desc
Main Document    Page 28 of 134

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Unofficial Document

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _A.G.L_

13757679

-6A(AZ) (0206)    Page 12 of 15    Form 3003 1/01 (rev. 6/02)

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** **Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          *Ariel Guerrero López* _____ (Seal)
                                          **Ariel Guerrero Lopez**        -Borrower


_____


_____ (Seal)
                                           -Borrower


_____ (Seal)      _____ (Seal)
                      -Borrower                                              -Borrower


_____ (Seal)      _____ (Seal)
                      -Borrower    Unofficial Document                       -Borrower


_____ (Seal)      _____ (Seal)
                      -Borrower                                              -Borrower


13757679

-6A(AZ) (0206)                    Page 14 of 15                    Form 3003   1/01  (rev. 6/02)

STATE OF ARIZONA, Maricopa                                    County ss:

The foregoing instrument was acknowledged before me this August 28, 2003
by Ariel Guerrero Lopez

My Commission Expires: 5/9/05

_____
Notary Public

OFFICIAL SEAL
ROSA I. RANGEL
Notary Public - State of Arizona
MARICOPA COUNTY
My comm. expires May 9, 2005

Unofficial Document

13757679

VMP -6A(AZ) (0206)            Page 15 of 15            Initials: A.G.L.
                                                        Form 3003  1/01  (rev. 6/02)

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **28th** day of **August 2003**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **Bank One, N.A.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**4219 N. 99th Lane, Phoenix, AZ 85037**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in **Declaration of Covenants, Conditions and Restrictions**

(the "Declaration"). The Property is a part of a planned unit development known as **The Vineyard**

Unofficial Document

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

13757679

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3150 1/01
Page 1 of 3
Initials: A.G.L.
-7R (0008) VMP MORTGAGE FORMS - (800)521-7291

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: A·G·L

13757679

VMP-7R (0008)                  Page 2 of 3                  Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_Ariel Guerrero Lopez_____ (Seal)          _____ (Seal)
**Ariel Guerrero Lopez**              -Borrower                                                                    -Borrower


_____ (Seal)          _____ (Seal)
                                    -Borrower                                                                    -Borrower


_____ (Seal)          _____ (Seal)
                                    -Borrower                                                                    -Borrower

Unofficial Document

_____ (Seal)          _____ (Seal)
                                    -Borrower                                                                    -Borrower


13757679

VMP®-7R (0008)                              Page 3 of 3                              Form 3150 1/01

# Exhibit 5

# 2005 World Savings Banks, FSB Deed of Trust

**GREAT AMERICAN**
**TITLE AGENCY, INC.**

# Unofficial
## 20Document

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

40
Ib

LOAN NUMBER:0040817900

NOTE AMOUNT: $141,000.00

*4/03081-003kRL Y/*

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $176,250.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

---

I.  **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
    **(A)  Security Instrument.** This Deed of Trust, which is dated **September 22, 2005** will be called the "Security Instrument."

    **(B)  Borrower. ARIEL GUERRERO, A MARRIED MAN** sometimes will be called "Borrower" and sometimes simply "I" or "me."  *✝LOPe3*

    **(C)  Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender." Lender is a **FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is **1901 Harrison Street, Oakland, CA 94612** .

    **(D)  Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$141,000.00** ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **October 15, 2035** ("Maturity Date").

    **(E)  Property.** The property which is located at **4219 N 99TH LN, PHOENIX, AZ  85037-2514** will be called the "Property" or the "Described Property". The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument.

    **(F)  Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

    **(G)  Person.** Any person, organization, governmental authority or other party will be called "Person."

    **(H)  Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation,** is the "Trustee."



Case 2:17-ap-00002-MCW    Doc 1    Filed 01/03/17    Entered 01/03/17 13:05:11    Desc
Main Document      Page 38 of 134

0040817900

**II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**
I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Covenants 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

**III.    DESCRIPTION OF THE PROPERTY**
I give Trustee rights in the Property described below:

(i)    The Property as defined in Section I(E) above;

(ii)    All buildings and other improvements that are located on the Described Property;

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;    Unofficial Document

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the Property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Covenant 2 below.

**IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**
I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS (PROMISES AND AGREEMENTS)

I promise and I agree with Lender as follows:

**1.    BORROWER'S PROMISE TO PAY**
I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2.    PAYMENTS FOR TAXES AND INSURANCE**
    **(A)    Borrower's Obligations**
        I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

Case 2:17-ap-00002-MCW    Doc 1    Filed 01/03/17    Entered 01/03/17 13:05:11    Desc
Main Document        Page 39 of 134

**(B)    Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all Sums Secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all Sums Secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Covenant 27, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the Sums Secured by this Security Instrument.

**3.     APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Covenants 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;
Second, to pay any advances due to Lender under this Security Instrument;
Third, to pay the amounts due to Lender under Covenant 2 above;
Fourth, to pay interest due under the Secured Notes;
Fifth, to pay deferred interest due under the Secured Notes;
Sixth, to pay principal due under the Secured Notes;
Last, to pay late charges due under the Secured Notes.

**4.     BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Covenant 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien**. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.      BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Covenants 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Covenant 27 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**6.      BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and

directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Covenant 5 above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Covenant 7, Lender does not have to do so. Any action taken by Lender under this Covenant 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Covenant 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Covenant 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Covenants 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

## 10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A) Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)   Lender's Rights**
Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Covenant 27 below to demand that I make immediate payment in full of the Sums Secured.

**11.   OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**
Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the Sums Secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.   MAXIMUM LOAN CHARGES**
If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**13.   LEGISLATION AFFECTING LENDER'S RIGHTS**
If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**
Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **4219 N 99TH LN, PHOENIX, AZ 85037--251**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Excepted as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used in this Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Covenant 14 or of applicable law.

**15.   GOVERNING LAW; SEVERABILITY**
This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**
If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession

of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Covenant 16, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Covenant 27, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Covenant 16, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

### 17. INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An **assignment** is a transfer of rights to another. I may have rights to bring legal action against Persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sums Secured after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

### 18. CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

### 19. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

### 20. WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

### 21. CAPTIONS

The captions and headings at the beginning of each Section of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

### 22. MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

### 23. CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)** If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

**(B)** The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of Incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

Case 2:17-ap-00002-MCW    Doc 1    Filed 01/03/17    Entered 01/03/17 13:05:11    Desc
Main Document    Page 44 of 134

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Covenant 23 according to the terms described in Covenant 7 above.

**(C)** If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Covenant 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Covenant 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)** I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**24.   FUTURE ADVANCES**     Unofficial Document
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**25.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**
**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

Case 2:17-ap-00002-MCW    Doc 1    Filed 01/03/17    Entered 01/03/17 13:05:11    Desc
Main Document      Page 45 of 134

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)   the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 26.   SUBSTITUTION OF TRUSTEE
I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

## 27.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY
It will be called a "Breach of Duty" if: (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all Sums Secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under any applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty unless notice is required by applicable law. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed under the applicable law to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender except as limited or prohibited by the applicable law. If the Property is sold under the applicable law, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property, except to the extent that the applicable law limits or prohibits any such charges.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

## 28.   RELEASE
Upon payment of all Sums Secured by this Security Instrument, Lender shall release this Security Instrument and all Secured Notes. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

## 29.   STATEMENT OF OBLIGATION
To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

Case 2:17-ap-00002-MCW   Doc 1   Filed 01/03/17   Entered 01/03/17 13:05:11   Desc
Main Document   Page 46 of 134

**30.    ( X  )  QUICK QUALIFYING LOAN PROGRAM**
I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**31.    ( X  )  OWNER OCCUPANCY**
Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X  )  VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

Unofficial Document

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

0040817900

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records. Additionally, I acknowledge the receipt of one conformed copy of the Secured Notes and this Security Instrument.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____ **(Seal)**
ARIEL GUERRERO LOPEZ

_____ **(Seal)**

_____ **(Seal)**

_____ **(Seal)**

Unofficial Document

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

STATE OF ARIZONA }
       SS
County of Maricopa }

The foregoing instrument was acknowledged before me this _____23_____ day of
_September__, 2005 by _Ariel Guerrero Lopez_.

Notary Public

My commission expires:

OFFICIAL SEAL
KIM LEITZ
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Dec. 12, 2005

Unofficial Document

0040817900

**BORROWER(S)' SPOUSE(S):** The undersigned hereby joins in this Security Instrument for the sole purpose of encumbering, subordinating, conveying and/or waiving any current or potential interest in the Property. By signing below, the undersigned encumbers, subordinates, conveys and/or waives any and all rights, interests or claims in the Property, including, but not limited to, homestead, dower, marital or joint-occupancy rights. No personal liability under the Note is hereby incurred by the undersigned joining spouse.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S)' SPOUSE(S):**

Alma A Glicalde L.                              **(Seal)**
_____

                                              **(Seal)**
_____

                                              **(Seal)**
_____

Unofficial Document

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

STATE OF ARIZONA    }

                               SS

County of Maricopa    }

The foregoing instrument was acknowledged before me this ___23___ day of ___September___, 2005 by _Alma A. Elizalde L.___.

_____
Notary Public

My commission expires:

```
OFFICIAL SEAL
KIM LEITZ
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Dec. 12, 2005
```

Unofficial Document

# WORLD SAVINGS

## E X H I B I T "A"

## LEGAL DESCRIPTION

### LOAN NO. <u>0040817900</u>

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **MARICOPA** STATE OF **ARIZONA**, DESCRIBED AS FOLLOWS:

Lot 30, KAUFMAN, AND BROAD AT THE VINEYARDS, according to the plat recorded in Book 377 of Maps, Page 50, records of Maricopa County, Arizona and Affidavit of Correction recorded June 20, 1994 in 94-482074 of Official Records.

Unofficial Document

**TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.**

**Exhibit 6**

**June 10, 2009 Notice of Trustee's Sale**

[RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:]

**Trustee Corps**
**2112 Business Center Drive,**
**2nd floor**
**Irvine, CA  92612**

09
es

---

[Space above this line for recorder's use only]

Trustee Sale No. **AZ0846716**
Loan No. **0040817900**
Order No. **090409216**

# NOTICE OF TRUSTEE'S SALE

The following legally described trust property will be sold, pursuant to the power of sale under that certain Trust Deed **Recorded on 09/29/2005 as Document No. 20051441871**, in the records of **Maricopa**, County, **ARIZONA**, at public auction to the highest bidder at: **THE MAIN ENTRANCE OF THE SUPERIOR COURT BUILDING  201 WEST JEFFERSON, PHOENIX, AZ**, in **Maricopa** county, on **09/10/2009** at **02:00PM** of said day.

Street address, if any, or identifiable location of Trust property:
**4219 N 99TH LN, PHOENIX, AZ 85037-2514**

Legal description of Trust property:
**LOT 30, KAUFMAN, AND BROAD AT THE VINEYARDS, ACCORDING TO THE PLAT RECORDED IN BOOK 377 OF MAPS, PAGE 50, RECORDS OF MARICOPA COUNTY, ARIZONA AND AFFIDAVIT OF CORRECTION RECORDED JUNE 20, 1994 IN 94-482074 OF OFFICIAL RECORDS.**

Tax Parcel Number:
**102-82-798 9**

Original principal balance:
**$141,000.00**

Name and address of Beneficiary:
**WACHOVIA MORTGAGE, FSB. F.K.A. WORLD SAVINGS BANK**
**1100 Corporate Center Drive, Raleigh, NC  27607-5066**

Name and address of original Trustor(s):
**ARIEL GUERRERO LOPEZ, A MARRIED MAN**
**4219 N 99TH LN, PHOENIX, AZ 85037-2514**

Name, address and telephone number of Trustee:
**MTC FINANCIAL, INC. dba TRUSTEE CORPS**
**2112 BUSINESS CENTER DRIVE, 2ND FLOOR**
**IRVINE, CA  92612**
**(949) 252-8300**

(T-atocov for az)

Trustee Sale No. **AZ0846716**
Loan No. **0040817900**
Order No. **090409216**
ATO Control Number: **22253BB8W27C**

Said sale will be made for cash (payable at time of sale), but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to pay the remaining principal sum of the note secured by said Trust Deed, which includes interest thereon as provided in said Note, advances, if any under the terms of said Trust Deed, interest on advances, if any, fees, charges and expenses of the Trustee and of the trust created by said Trust Deed.

The Trustee will accept only cash or cashier's check for reinstatement or price bid payment. Reinstatement payment must be paid before five o'clock P.M. (5:00p.m.) on the last day other than a Saturday or legal holiday before the date of sale. The purchaser at the sale, other than the Beneficiary to the extent of his credit bid, shall pay the price bid no later than five o'clock P.M. (5:00p.m.) of the following day, other than a Saturday or legal holiday.

## If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.

Signature of Trustee:
**TRUSTEE CORPS, as Successor Trustee**

**R. JOHNSEN, President**

Manner of Trustee qualification:
**Insurance Agent, as required by ARS Section 33-803, Subsection A**

Unofficial Document

Name of Trustee's regulator:
**Arizona Department of Insurance**

Dated this, __10__ day of __June__, 2009

**Trustee Corps**
**2112 Business Center Drive,**
**2nd floor**
**Irvine, CA 92612**
**(949) 252-8300**

**For sale information contact: (714) 573-1965, (714) 573-7777, (949) 252-8300**
**For Reinstatement/Pay Off requests contact: (949) 252-8300 ext. 181**

State of **CALIFORNIA**
County of **ORANGE**

On __6-10-09__ before me, __Paul Kim__, personally appeared **R. JOHNSEN** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public in and for said County and State

PAUL KIM
Commission # 1691470
Notary Public - California
Orange County
My Comm. Expires Sep 3, 2010

**Exhibit 7**

**September 1, 2009 Cancellation of Trustee's Sale**

Unofficial

20Document

09

ch

[RECORDING REQUESTED BY:]

**TRUSTEE CORPS**

[WHEN RECORDED MAIL TO:]

**ARIEL GUERRERO LOPEZ, A MARRIED MAN**
**4219 N 99TH LN**
**PHOENIX, AZ 85037-2514**

Tax parcel number: **102-82-798 9**

_____

[ Space above this line for recorder's use only]

Trustee Sale #: **AZ0846716**   Loan #: **0040817900**   Order #: **090409216**

# CANCELLATION OF NOTICE OF SALE
## Of Declaration of Default and Demand for Sale
## and of Notice of Breach and Election to Cause Sale

NOTICE IS HEREBY GIVEN:  That **MTC FINANCIAL, INC. dba TRUSTEE CORPS** is the duly appointed Trustee under the following described Deed of Trust:

TRUSTOR:  **ARIEL GUERRERO LOPEZ, A MARRIED MAN**

BENEFICIARY:  **WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES**

RECORDING INFORMATION:  **Recorded on 09/29/2005 as Document No. 20051441871** of official records in the Office of the Recorder of **Maricopa** County, **Arizona**, describing the land therein: **LOT 30, KAUFMAN, AND BROAD AT THE VINEYARDS, ACCORDING TO THE PLAT RECORDED IN BOOK 377 OF MAPS, PAGE 50, RECORDS OF MARICOPA COUNTY, ARIZONA AND AFFIDAVIT OF CORRECTION RECORDED JUNE 20, 1994 IN 94-482074 OF OFFICIAL RECORDS.**

WHEREAS:  The Beneficiary under that certain Deed of Trust hereinabove described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and WHEREAS:  Notice was heretofore given by the Beneficiary, of breach of the obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described,

NOW THEREFORE:  Notice is hereby given that the Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this cancellation shall not in any manner be construed as waiving or affecting any breach or default past, present or future, under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall in no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be said and remain in force the same as if said Declaration and Notice had not been made and given.

Trustee Sale #: **AZ0846716**  Loan #:  **0040817900**  Order #: **090409216**

Said Notice was **Recorded on 06/10/2009, as Instrument # 20090530066**, of official records in the Office of the Recorder of **Maricopa** County, **Arizona**.

Dated: **9/1/09**

**MTC FINANCIAL, INC. dba TRUSTEE CORPS, as Successor Trustee**

By:  Rande Johnsen, President

State of **CALIFORNIA**
County of  **ORANGE**

On **SEP 0 2 2009** before me, **Paul Kim**, personally appeared **Rande Johnsen** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.  Unofficial Document

WITNESS my hand and official seal.

Notary Public in and for said County and State

PAUL KIM
Commission # 1691470
Notary Public - California
Orange County
My Comm. Expires Sep 3, 2010

**Exhibit 8**

**February 7, 2012 Notice of Trustee's Sale**

Unofficial Document

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

TRUSTEE CORPS
17100 Gillette Ave
Irvine, CA 92614

---

| Trustee Sale No. AZ08000021-12-1 | APN 102-82-798-9 | Title Order No. 1758646 |
|---|---|---|

## NOTICE OF TRUSTEE'S SALE

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust dated September 22, 2005 and recorded on September 29, 2005 as Instrument No. 20051441871 of official records in the Office of the Recorder of Maricopa County, Arizona at public auction to the highest bidder **at the Main Entrance to the Superior Courts Building, 201 W. Jefferson, Phoenix, AZ** on **May 10, 2012** at **10:00 AM** on said day.

The street address and other common designation, if any, of the real property described above is purported to be: 4219 N 99TH LN, PHOENIX, AZ 85037-2514

LOT 30, KAUFMAN AND BROAD AT THE VINEYARDS, ACCORDING TO THE PLAT RECORDED IN BOOK 377 OF MAPS, PAGE 50, RECORDS OF MARICOPA COUNTY, ARIZONA AND AFFIDAVIT OF CORRECTION RECORDED JUNE 20, 1994 IN 94-482074 OF OFFICIAL RECORDS.

APN: 102-82-798-9

Original Principal Balance $141,000.00

<u>Name and Address of original Trustor</u>
ARIEL GUERRERO LOPEZ, A MARRIED MAN
4219 N 99TH LN, PHOENIX, AZ 85037-2514

<u>Name and Address of the Beneficiary</u>
Wells Fargo Bank, N.A., Successor by Merger to Wells Fargo Bank Southwest, N.A. FKA Wachovia Mortgage, FSB FKA World Savings Bank, FSB
c/o Wachovia Mortgage Corporation
4101 Wiseman Blvd
San Antonio, TX 78251

<u>Name and Address of Trustee</u>
MTC FINANCIAL INC. dba Trustee Corps
17100 Gillette Ave, Irvine, CA 92614
949-252-8300

Said sale will be made for cash (payable at time of sale), but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to pay the remaining principal sum of the note secured by said Trust Deed, which includes interest thereon as provided in said Note, advances, if any under the terms of said Trust Deed, interest on advances, if any, fees, charges and expenses of the Trustee and of the trust created by said Trust Deed.

The Trustee will accept only cash or cashier's check for reinstatement or price bid payment. Reinstatement payment must be paid before five o'clock P.M. (5:00 P.M.) on the last day other than a Saturday or legal holiday before the date of sale. The purchaser at the sale, other than the Beneficiary to the extent of his credit bid, shall pay the price bid no later than five o'clock P.M. (5:00 P.M.) of the following day, other than a Saturday or legal holiday

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.

Conveyance of the property shall be without warranty, express or implied, and subject to all liens, claims or interest having a priority senior to the Deed of Trust. The Trustee shall not express an opinion as to the condition of title.

DATE:  February 7, 2012

Trustee Corps

Rosenda Cardenas, Authorized Signatory

Manner of Trustee qualification:
**Real Estate Broker, as required by ARS Section 33-803, Subsection A**

Name of Trustee's regulator:
**Arizona Department of Real Estate**

**SALE INFORMATION CAN BE OBTAINED ONLINE AT** www.lpsasap.com
AUTOMATED SALES INFORMATION PLEASE CALL
Fidelity ASAP (714) 730-2727 Priority Posting and Publishing (714)573-1965
FEI (714) 277-4845

State of ARIZONA
County of MARICOPA

On this 7th day of February, 2012, before me, **LE ROY TATE**, personally appeared **ROSENDA CARDENAS**, whose identity was proven to me on the basis of satisfactory evidence to be the person who he or she claims to be, and acknowledged that he or she signed the above/attached document.

Le Roy Tate, Notary Public
Commission Expires: December 7, 2015



# Exhibit 9

# August 17, 2012 Real Estate Purchase Contract

ATLANTICO PROFESSIONAL SERVICES

1990 W CAMELBACK RD # SUITE 211

PHOENIX , AZ 85015

DATE 08- 02-2012

18 % INTERES RATE

1- 1- YEAR IS ONLY PRINCIPAL INTERES
2- NO PREPAYMENT PENALTY
3- LATE CHARGE AFTER 5 DAYS =10 % OFF INTEREST
4- MONTHLY INTEREST ONLY FIRST YEAR IS **$858.82**
5- **AFTER YEAR PER 9 YEARS IS $ 858.82 PRINCIPAL & INTEREST**
6- **PURCHASE PRICE $68,000.00**
7- **DOWN PAYMENT $20,400.00**
8- **AMOUNT FINANCING IS $ $47,600.00**
9- **FIRST PAYMENT IS 8-31-2012**
10- **ADRES PAYMENT IS 1990 W CAMELBACK RD SUITE 211, PHOENIX , AZ**
11- **DEPOSIT NUMBER IS CHASE ACCOUNT 923426563 ATLANTICO PROFESSIONAL SERVICES**
12- **BORROWER NAME : ALMA ,ADELA LOPEZ.**

ATLANTICO PROFESSIONAL SERVICES (LENDER )     ALMA ADELA LOPEZ ( BORROWER )

08-17-12

**Exhibit 10**

**Wells Fargo Short Shale Approval**



Wells Fargo Home Mortgage
Telephone: 1-888-308-3964
Fax: 1-877-319-9891
Attn: Short Sale Fulfillment
Mailcode: MAC T7422-010
4101 Wiseman Boulevard
San Antonio, Texas 78251
shortsales@wellsfargo.com

Correspondence:

Hours of Operation: Mon-Fri, 8 AM - 5 PM or
Sat, 8 AM - 5:00 PM, CT

Date: July 15, 2012

Loan Number: 40817900
Property Address: 4219 N 99TH LN
PHOENIX AZ 85037

Subject: Demand Statement for Loan 40817900

Dear ARIEL GUERRERO

Wells Fargo Home Mortgage approves the sale of the property referenced in the account information box above. This sale will result in a short payoff of the mortgage loan referenced above, and the mortgagor(s) by completing the short sale based on this Demand Statement, acknowledge and waive any and all rights to any escrow balance, insurance proceeds or refunds from prepaid expenses. Neither the seller nor any other party may receive any sale proceeds or any funds as a result of this transaction except as noted in this Demand Statement. In accordance with state and local laws, the Demand Statement may be voided at any time.

When Wells Fargo Home Mortgage receives the required payoff and all required documentation, we will arrange for the mortgage of record to be released. Wells Fargo Home Mortgage will notify the major credit bureau(s) to reflect "account paid in full with less than full balance" which should appear on the credit report within 60-90 days from the date of notification. However, Wells Fargo Home Mortgage is not a credit bureau and cannot control how or when the report will reflect information to other users of credit reports. Compliance with this Demand Statement coupled with release of the mortgage shall waive the bank's right to seek a deficiency under the loan documents or any of its other rights there under, and the obligations evidenced by the note.

**What you need to know about foreclosure**
Even though you have been approved for a short sale, it's important to understand that the foreclosure process may proceed at the same time. Foreclosure may continue and a sale date may be scheduled as you are actively working towards completing the short sale.

Wells Fargo is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

AUTHORIZED TO PAY FROM ESCROW

Please note, as part of the foreclosure process you may receive notices delivered by mail or see steps being taken to proceed with a foreclosure sale of your home. There isn't much time. So in order to help you, it's critical that you comply with the requirements of the short sale promptly.

Once certified funds are received and approval is final, a document releasing the mortgage will be sent to record this decision. If the property was in foreclosure, that action will stop when the terms of the approval are met.

### Sale approval details

This approval is based on the purchase contract dated May 24, 2012 between ARIEL GUERRERO, the seller(s), and Atlantico Professional Services, LLC, the buyer(s), for a purchase price of $68,000 and in a HAFA closing an executed Request for Approval of Short Sale. The terms of our approval and instruction to the Settlement Agent are as follows:

1. The required payoff is $53,178, scheduled for settlement on or before August 27, 2012. Your contribution and settlement costs for this transaction are:

    Mortgagor payment
    Cash at Closing: $0
    Promissory Note: $0

    Approved Seller Closing Costs: $ 2,560
    Relocation Assistance to ARIEL GUERRERO: $3,000
    Real Estate Commission: $ 4,080
    2nd Lien Payoff: $0 to N/A
    3rd Lien Payoff: $0 to N/A           HAFA

Please be advised that any reference to the junior lien holder payoff is contingent upon separate written approval of the transaction by the junior lien holder. Furthermore, if the junior lien holder is affiliated with Wells Fargo Bank, N.A. or any of its subsidiaries, the approval must be obtained separately. This does not constitute approval on behalf of any junior lien holder. In addition, if you have been approved for the Home Affordable Foreclosure Alternatives (HAFA) program, prior to releasing any funds to holders of subordinate liens and/or mortgages, the closing agent must obtain a written commitment from the subordinate lien holder that it will release Seller from all claims and liability relating to the subordinate lien in exchange for receiving the agreed upon payoff amount.

2. You as the Settlement Agent must contact Wells Fargo Home Mortgage no later than 48 hours before the scheduled settlement date and provide a copy of the final HUD-1 Settlement Statement. The final estimated HUD-1 must comply with the approval terms noted above and must contain complete buyer and seller information including a forwarding address for the seller. In addition, the Settlement Agent must provide the fully executed HUD Closing Worksheet for FHA loans. If settlement is delayed and/or rescinded, Wells Fargo Home Mortgage must be notified immediately to review the request and provide written approval, if granted per investor or mortgage insurance guidelines.

3. Furthermore you as the Seller, for and in consideration of the approval, closing and funding of the short payoff , agree that you will re-execute any documents after closing should any corrections be needed due to any typographical or clerical errors discovered in any or all of the closing documentation required to be executed at the time of settlement.

4. The purchase contract may not be amended without Wells Fargo Home Mortgage prior written approval. Furthermore, the seller acknowledges that the buyer is not related to the seller, and any relationship between a participating Broker/Realtor has been disclosed prior to issuing this Demand Statement. This transaction may not close if it involves any third party who received a deed from mortgagor at, prior to, or after settlement, and the purchase contract may not be assigned.

5. The required payoff funds together with any excess funds must be wired to:

> Wells Fargo Bank, N.A.
> Account No.: 6707006638
> ABA No.: 121000248
> Special Information for Beneficiary:
> Apply Funds to loan: 40817900
> Mortgagor: ARIEL GUERRERO
> From: Sender's Name and phone number
> ˮ If this information is not provided the wire will be rejected.

6. Settlement Agent and Seller(s) must execute this Demand Statement which shall evidence their understanding and agreement of the conditions and terms under which Wells Fargo Home Mortgage agrees to the short sale and release of mortgage.

7. The Closing Documents including the fully executed Demand Statement, and original executed Promissory Note, if applicable, must be delivered to us prior to the settlement to:

> Wells Fargo Home Mortgage
> Attn: Short Sale Fulfillment
> Mailcode: MAC T7422-010
> 4101 Wiseman Boulevard
> San Antonio, Texas 78251
> shortsales@wellsfargo.com

Failure to comply with any of these requirements could result in our refusal to issue a satisfaction, release or conveyance. Once certified funds are received and approval is final, a document releasing the mortgage will be sent to record this decision.

Thank you for your courtesy and cooperation. If you have questions or need additional information, please call me at the phone number below.

Sincerely,

JORGE SANCHEZ
877-371-9962      EXT: 84827

Acknowledged and Agreed:

_____        _____
                                       Seller

_____        _____
Settlement Agent                       Seller

                                       _____
                                       Seller

40817900

We are required by the Fair Debt Collection Practices Act to inform you that if your loan is currently delinquent or in default, as your loan servicer, we will be attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge, and the loan was not reaffirmed in the bankruptcy case, we will only exercise our right as against the property and are not attempting any act to collect the discharge debt from you personally.

Wells Fargo Home Mortgage cannot dispense tax or legal advice. Please consult a tax advisor and/or attorney regarding any consequences associated with a short sale.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors my not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

AUTHORIZED TO PAY FROM ESCROW

# Exhibit 11

# July 31, 2012 Warranty Deed

**RECORDING REQUESTED BY**
**Title Management Agency of**
**Arizona LLC**

**AND WHEN RECORDED MAIL TO:**

**ATLANTICO PROFESSIONAL**
**SERVICES, LLC**
**1990 E CAMELBACK ROAD, #211**
**PHOENIX, AZ 85015**

ESCROW NO.:**20122006-015- MG**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# Warranty Deed

For the consideration of Ten Dollars, and other valuable considerations, I or we,
**ARIEL GUERRERO LOPEZ, a married man, as his sole and separate property**
do/does hereby convey to
**ATLANTICO PROFESSIONAL SERVICES, LLC, an Arizona limited liability company**
the following real property situated in Maricopa County, Arizona:

Lot 30, KAUFMAN AND BROAD AT THE VINEYARDS, a subdivision recorded in Book 377 of Maps, page 50, and Affidavit of Correction recorded in Document No. 94-0482074, records of Maricopa County, Arizona.

SUBJECT TO: Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations, and liabilities as may appear of record. And I or we do warrant the title against all persons whomsoever, subject to the matters set forth above.

July 31, 2012

ESCROW NO.: **20122006-015-MG**

Signature and Notary Page for Warranty Deed

**SELLER(S):**

_Ariel Guerrero L._
ARIEL GUERRERO LOPEZ

State of **ARIZONA**                                    }ss:
County of **Maricopa**

On _____ 07 / 31 / 12 _____ before me, the undersigned, a Notary Public, in and for said County and State, personally appeared **ARIEL GUERRERO LOPEZ**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**WITNESS** my hand and official seal.

Signature _____

BEATRICE ZUNIGA
County of Maricopa
Notary Public
My Commission Expires
October 13, 2013

Unofficial Document

Page 2 of 2

RESCLPKG

# Exhibit 12

# HUD-1 Statement



# A. **Settlement Statement (HUD-1)**

## B. Type of Loan

| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv.Ins. | | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: | E. Name & Address of Seller: | F. Name & Address of Lender: |
|---|---|---|
| ATLANTICO PROFESSIONAL SERVICES, LLC 1990 W CAMELBACK RD. STE. 211 PHOENIX, AZ. 85015 | ARIEL GUERRERO LOPEZ 4219 N 99th Lane PHOENIX, AZ. 85037 | DAVID AND SHARON PACE 1999 REVOCABLE LIVING TRUST DATE JUNE 25, 1999 BY DAVID PACE AS TRU STEE PO BOX 97235, PHOENIX AZ 85060 |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: |
|---|---|---|
| 4219 N 99th Lane , Phoenix Az. 85037 - Maricopa 102-82-798 8 Lot(s) 30, of KAUFMAN AND BROAD AT THE VINEYARDS Map Book 377, Map Page 50 | Title Management Agency of Arizona LLC Place of Settlement: 480-839-6807 4657 S Lakeshore Dr. Ste 2 Tempe Az. 852 | 08/03/2012 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100 GROSS AMOUNT DUE FROM BORROWER** | | **400 GROSS AMOUNT DUE TO SELLER** | |
| 101 Contract Sales Price | $68,000.00 | 401 Contract Sales Price | $68,000.00 |
| 102 Personal Property | | 402 Personal Property | |
| 103 Settlement Charges to Borrower (Line 1400) | $3,164.00 | 403 | |
| 104 | | 404 | |
| 105 | | 405 | |
| **Adjustments For Items Paid By Seller In Advance** | | **Adjustments For Items Paid By Seller In Advance** | |
| 106 City/Town Taxes | | 406 City/Town Taxes | |
| 107 County Taxes | | 407 County Taxes | |
| 108 Assessments | | 408 Assessments | |
| 109 | | 409 | |
| 110 | | 410 | |
| 111 | | 411 | |
| 112 | | 412 | |
| **120 Gross Amount Due From Borrower** | $71,164.00 | **420 Gross Amount Due To Seller** | $68,000.00 |
| **200 Amount Paid by or in Behalf of Borrower** | | **500 Reductions In Amount Due to Seller** | |
| 201 Deposit Or Earnest Money | | 501 Excess Deposit (See Instructions) | |
| 202 Principal Amount Of New Loan(s) | $47,600.00 | 502 Settlement Charges to Seller (Line 1400) | $5,230.00 |
| 203 Existing Loan(s) Taken Subject To | | 503 Existing Loan(s) Taken Subject To | |
| 204 Borrower Deposit with Lender | | 504 Payoff First Mortgage Loan to | $58,381.12 |
| 205 Lender Credit Cure Flood Cert | | 505 Payoff of second Mortgage Loan | |
| 206 | | 506 | |
| 207 Seller Paid Owner Policy | $803.00 | 507 | $803.00 |
| 208 | | 508 | |
| 209 | | 509 | |
| **Adjustments For Items Unpaid By Seller** | | **Adjustments For Items Unpaid By Seller** | |
| 210 City/Town Taxes | | 510 City/Town Taxes | |
| 211 County Taxes  01/01/2012 to 08/03/2012 | $585.88 | 511 County Taxes  01/01/2012 to 08/03/2012 | $585.88 |
| 212 Assessments | | 512 Assessments | |
| 213 | | 513 | |
| 214 | | 514 RELOCATION ASSISTANCE TO | |
| 215 | | 515 ARIEL GUERRERO | $3,000.00 |
| 216 | | 516 | |
| 217 | | 517 | |
| 218 | | 518 | |
| 219 | | 519 | |
| **220 Total Paid By/For Borrower** | $48,988.88 | **520 Total Reduction Amount Due Seller** | $68,000.00 |
| **300 Cash At Settlement From/To Borrower:** | | **600 Cash At Settlement To/From Seller:** | |
| 301 Gross Amount Due From Borrower (Line 120) | $71,164.00 | 601 Gross Amount Due To Seller (Line 420) | $68,000.00 |
| 302 Less Amount Paid By/For Borrower (Line 220) | $48,988.88 | 602 Less Reductions In Amount Due Seller (Line 520) | $68,000.00 |
| 303 Cash ☑ From ☐ To Borrower | $22,703.12 | 603 Cash ☑ To ☐ From Seller | $0.00 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

Previous editions are obsolete                Page 1 of 4                HUD-1

## L. Settlement Charges

| | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|
| **700** | **Total Real Estate Broker Fees** - based on $68,000.00 @ 3% = | | | |
| | Division of commission (line 700) as follows : | | | |
| 701 | $ 2,040.00 To EAGLE FIRST REALTY | | | |
| 702 | $ 2,040.00 To EAGLE FIRST REALTY | | | |
| 703 | Commission Paid At Settlement | | | |
| 704 | | | | $4,080.00 |

| | | | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|---|---|
| **800** | **Items Payable in Connection with Loan** | | | | | |
| 801 | Our Origination Charge includes Origination 1% or $4162.50 | | | | | |
| 802 | Your Credit or Charge (Points) for the Specific Interest Rate Chosen | | $ | (from GFE #1) | | |
| 803 | Your Adjusted Origination Charges | | $ | (from GFE #2) | | |
| 804 | Appraisal Fee to | | | (from GFE #A) | | |
| 805 | Credit Report to | | | (from GFE #3) | | |
| 806 | Tax Service Fee to | | | (from GFE #3) | | |
| 807 | Flood certification | | | (from GFE #3) | | |
| 808 | | | | (from GFE #3) | | |
| 809 | | | | (from GFE #1) | | |
| 810 | | | | (from GFE #1) | | |
| 811 | | | | | | |

| | | | | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|---|---|---|
| **900** | **Items Required by Lender to be Paid in Advance** | | | | | | |
| 901 | Daily Interest Charges From | To | @ | /Day | (from GFE #10) | | |
| 902 | Mortgage Insurance Premium for | Month(s) To | | | (from GFE #3) | | |
| 903 | Homeowner's Insurance for | Year(s) To | | | (from GFE #11) | | |
| 904 | | | | | | | |
| 905 | | | | | | | |

| | | | | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|---|---|---|
| **1000** | **RESERVES DEPOSITED WITH LENDER** | | | | | | |
| 1001 | Initial Deposit for Your Escrow Account | | | | (from GFE #9) | | |
| 1002 | Homeowner's Insurance | ALL STATE | Months @ | Per Month $ | #VALUE! | $1,485.00 | |
| 1003 | Mortgage Insurance | | Months @ | Per Month $ | | $628.00 | |
| 1004 | Property Taxes | | Months @ | Per Month $ | | | |
| 1005 | | | Months @ | Per Month $ | | | |
| 1006 | | | Months @ | Per Month $ | | | |
| 1007 | Aggregate Adjustment | | | -$ | | | |

| | | | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|---|---|
| **1100** | **TITLE CHARGES** | | | | | |
| 1101 | Title services and lenders title insurance | | | | | |
| 1102 | Settlement Or Closing Fee | | $ | (from GFE #4) | $985.00 | |
| 1103 | Owner's Title Insurance | | | | | $775.00 |
| 1104 | Lender's Title Insurance | | $ | (from GFE #5) | $580.00 | |
| 1105 | Lender's Title Policy Limit $ | | | | | |
| 1106 | Owner's Title Policy Limit $ | | | | | |
| 1107 | Agent's Portion of the Total Title Insurance Premium | | $ | | | |
| 1108 | Underwriter's Portion of the Total Title Insurance Premium | | $ | | | |
| 1109 | | | | | | |
| 1110 | | | | | | |
| 1111 | | | | | | |

| | | | | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|---|---|---|
| **1200** | **GOVERNMENT TRANSFER AND RECORDING CHARGES** | | | | | | |
| 1201 | Government Recording Charges | | | | | | |
| 1202 | Deed $ | Mortgage $ | Releases $ | | (from GFE #7) | | |
| 1203 | Transfer Taxes | | | | | | |
| 1204 | City/County Tax Stamps | Deed $ | Mortgage $ | | (from GFE #8) | | |
| 1205 | State Tax Stamps | Deed $ | Mortgage $ | | | | |
| 1206 | | | | | | | |

| | | | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|---|---|
| **1300** | **ADDITIONAL SETTLEMENT CHARGES** | | | | | |
| 1301 | Required Services That You Can Shop For | | | (from GFE #6) | | |
| 1302 | | | $ | | | |
| 1303 | | | $ | | | |
| 1304 | | | | | | |
| 1305 | HOA 2 MTHS ADV to VINEYARD | | | | | $375.00 |
| 1306 | HOA CONDO CERT SVC FEE to CONDOCERT | | | | $60.00 | |
| 1307 | | | | | $39.00 | |

| | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|
| **1400** | **TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | $3,777.00 | $5,230.00 |

Previous editions are obsolete      Page 2 of 4      HUD-1

| Comparison of Good Faith Estimate (GFE) and HUD-1 Charges | | | Good Faith Estimate | HUD-1 |
|---|---|---|---|---|
| **Charges That Cannot Increase** | | **HUD-1 Line Number** | | |
| Our origination charge | # | 801 | | |
| Your credit or charge (points) for the specific interest rate chosen | # | 802 | | |
| Your adjusted origination charges | # | 803 | | |
| Transfer taxes | # | 1203 | | |

| **Charges That in Total Cannot Increase More Than 10%** | | | **Good Faith Estimate** | **HUD-1** |
|---|---|---|---|---|
| Government recording charges | # | 1201 | | |
| Appraisal Fee | # | 804 | | |
| Tax Service Fee | # | 806 | | |
| Flood Cert Fee | # | 807 | | |
| Title Services and Lender's Title Insurance | # | 1101 | | $ 985.00 |
| Owner's Title Insurance | # | 1103 | | $ 580.00 |
| | # | | | |
| | # | | | |
| **Total** | | | $ | $ 1,565.00 |
| **Increase between GFE and HUD-1 Charges** | | | $ or | |

| **Charges That Can Change** | | | **Good Faith Estimate** | **HUD-1** |
|---|---|---|---|---|
| Initial deposit for your escrow account | # | 1001 | $ | 1,485.00 |
| Daily interest charges | $          /day | # 901 | | |
| Homeowner's Insurance | # | 903 | | |
| Settlement Fee | # | 1102 | | |
| | # | | | |
| | # | | | |

**Loan Terms**

| | |
|---|---|
| Your initial loan amount is | $ 68,000.00 |
| Your initial loan term is | years |
| Your initial interest rate is | % |
| Your initial monthly amount owed for principal, interest, and any mortgage insurance is | $          includes ☐ Principal ☐ Interest ☐ Mortgage Insurance |
| Can your interest rate rise? | ☑ No ☐ Yes, it can rise to a maximum of          %. The first change will be on and can change again every          after          . Every change date, your interest rate can increase or decrease by          %. Over the life of the loan, your interest rate is guaranteed to never be lower than          % or higher than          %. |
| Even if you make payments on time, can your loan balance rise? | ☑ No ☐ Yes, it can rise to a maximum of $ |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | ☑ No ☐ Yes, the first increase can be on          and the monthly amount owed can rise to $          . The maximum it can ever rise to is $ |
| Does your loan have a prepayment penalty? | ☑ No ☐ Yes, your maximum prepayment penalty is $          . |
| Does your loan have a balloon payment? | ☐ No ☐ Yes, you have a balloon payment of $          due in          years on |
| Total monthly amount owed including escrow account payments | ☑ You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself. ☐ You have an additional monthly escrow payment of $          that results in a total initial monthly amount owed of $          . This includes principal, interest, any mortgage insurance and any items checked below: ☑ Property taxes   ☑ Homeowner's insurance ☐ Flood insurance   ☐ |

Note: If you have questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

**ATLANTICO PROFESIONAL SERVICES** _____  Date _____

**ATLANTICO PROFESSIONAL SERVICES** _____  Date _____

**ARIEL GUERRERO LOPEZ** _____  Date _____

**Sellers** _____  Date _____

**Settlement Agent** _____  Date _____

Warning: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

# Exhibit 13

# Receipt for Payment of $20,400.00



**ATLANTICO PROFESSIONAL SERVICES**
1990 W Camelback Rd. Ste 211
Phoenix, Az. 85015

**Fecha.-** July 30,2012

**Recibo.-** 295

**Nombre.-** Alma Elizalde López

**Concepto.-** compra casa/ renta financiamiento dando el 30% de enganche.

**Cantidad.$ 20,400.00**

*Alma Elizalde López*
Alma Elizalde López

# Exhibit 14

# July 31, 2012 Deed of Trust

Title Management Agency of AZ

WHEN RECORDED MAIL TO:

PO Box 97235
Phoenix, AZ 85060

Loan No. _____
*20122006*

**WARNING: THIS DEED OF TRUST AND ASSIGNMENT OF RENTS CONTAINS A DUE ON SALE CLAUSE AND PROHIBITS THE TRUSTOR FROM FURTHER ENCUMBERING THE REAL PROPERTY DESCRIBED HEREIN.**

## DEED OF TRUST AND ASSIGNMENT OF RENTS

**DATE:**     7/30/2012

**TRUSTOR:**     Atlantico Professional Services, LLC  a(n)  Arizona Limited Liability Company
Address:     1990 W. Camelback Rd. Suite 211 Phoenix, AZ 85015

**BENEFICIARY:**     David and Sharon Pace 1999 Revocable Living Trust dated June 25, 1999 by David Pace as Trustee
Address:     PO Box 97235  Phoenix, AZ 85060

**TRUSTEE:**     Ronald B. Herb, licensed real estate broker in Arizona
Address:     5420 W. Onyx Ave.  Glendale, AZ 85302

**PROPERTY:**     Located in Maricopa County, State of Arizona, described as follows:

Street Address:     4219 N. 99th Ln. Phoenix, AZ 85037
Tax Parcel:     102-82-798

## SEE EXHIBIT "A" LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

This Deed of Trust and Assignment of Rents (the "Deed of Trust") is made between Trustor, Trustee and Beneficiary above named.

**Witnesseth:**  That Trustor irrevocably grants and conveys to Trustee in Trust, with Power of Sale, the above described real property, and any after-acquired interest therein, together with:  (1)  All buildings, improvements and fixtures now or hereafter placed thereon;  (2)  all existing leases, and all future leases executed with respect to such property;  (3)  all rents, issues, profits and income thereof (all of which hereinafter called "property income") ;  (4)  all classes of property now or at any time hereafter, attached to or used in any way in connection with the use, operation or occupancy of such property;  (5)  all property, rights, permits, and privileges now or hereafter owned by Trustor or now or hereafter appurtenant to such property, which entitle Trustor or such property to receive water or electrical power for use thereon. All property granted, conveyed, transferred, and assigned to Trustee hereunder is hereafter referred to as the "property". Trustor warrants that it is well and truly seized of a good and marketable title in fee simple to the real property hereby conveyed; that the title to all property conveyed by this Deed of Trust is clear, free and unencumbered; and that Trustor shall forever warrant and defend the same unto Beneficiary, its successors and assigns, against all claims whatsoever; SUBJECT, HOWEVER, to the right, power, and authority hereinafter given to and conferred upon Beneficiary

*grt IM*

to collect and apply such property income; AND SUBJECT TO ANY easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Beneficiary's interest in the property.

## FOR THE PURPOSE OF SECURING:

(a) Performance of each agreement of Trustor herein contained. (b) Payment of the indebtedness evidenced by promissory note or notes of even date herewith, and any extension or renewal thereof, in the principal sum of $ <u>Fifty-three thousand and 00/100</u> DOLLARS (U.S. $53,000.00) executed by Trustor in favor of Beneficiary or order. (c) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or its successors or assigns, when evidenced by a promissory note or notes that they are secured by this Deed of Trust. (d) Payment of indebtedness evidenced by any and all other promissory note or notes executed by Trustor in favor of Beneficiary or order, whether executed prior to or after the date hereof and whether or not such note or notes are secured by other property.

### A. TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR COVENANTS AND AGREES:

1.  To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged, or destroyed thereon, and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer, or permit any act upon said property in violation of law; and to do all other acts which from character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

2.  To keep all improvements now or hereafter erected on said property continuously insured against loss by fire or other hazards specified by Beneficiary in an amount of the total obligation secured hereby or the total replacement cost of the improvements on said property, whichever is less. All policies shall be held by Beneficiary and be in such companies as Beneficiary may approve and have loss payable first to Beneficiary, as its interest may appear and then to Trustor. The amount collected under any insurance policy may be applied upon indebtedness hereby secured and in such order as Beneficiary may determine or at option of Beneficiary, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder nor cause discontinuance of any action that may have been or may thereafter be taken by Beneficiary or Trustee because of such default.

3.  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses of Beneficiary or Trustee, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear or be named, and in any suit brought by beneficiary to enforce this Deed of Trust.

4.  To pay before delinquent; all charges for utilities and services furnished to property; all taxes and assessments affecting said property; when due, all encumbrances, charges and liens, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees, and expenses of this Trust, including, without limiting the generality of the foregoing, the fees of Trustee for issuance of any Deed of Partial Release and Partial Reconveyance or Deed of Release and Full Reconveyance and all lawful charges, costs, and expenses in the event of reinstatement of, following default in, this Deed of Trust or the obligations secured hereby.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: Make or do the same in such manner and to the extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest, or compromise any encumbrance, change, or lien which in the judgment of either appears to be prior or superior hereto; and in exercising any such powers, pay necessary expenses, employ counsel, and pay its reasonable fees. All amounts

so paid, together with interest thereon at the same rate as is provided for in the note secured by this Deed of Trust or at the highest legal rate, whichever is greater, shall be part of the debt secured by this Deed of Trust and a lien on the above property.

5.        To pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to the provisions hereof, together with interest from date of expenditure at the same rate as is provided for in the note secured by this Deed of Trust or at the highest legal rate, whichever is greater. Any amounts so paid by Beneficiary or Trustee shall become part of the debt secured by this Deed of Trust and a lien on said property and immediately due and payable at option of Beneficiary or Trustee.

6.        Trustor acknowledges that Beneficiary, in making the loan secured hereby, has recognized and relied upon the financial strength and operating ability of the Trustor.  Trustor shall not further mortgage or encumber the Property or any interest therein without obtaining the Beneficiary's written consent, which may be withheld for any reason in Beneficiary's sole and absolute discretion.  In the event the Trustor voluntarily, involuntarily or by operation of law, shall sell, convey, or transfer the Property, or dispose of the Property or any part thereof, or any interest therein, or agrees so to do (the "Transfer"), without the written consent of Beneficiary being first obtained, the Beneficiary, at its sole option and within its sole discretion, may declare the entire indebtedness secured hereby to be due and payable in full and call for payment of the same in full at once. Consent as to any one Transfer shall not be deemed to be a waiver of the right to require consent to future Transfers and such consent shall not release the Trustor from any obligations hereof, the Note or of any of the Loan Documents.

7.        In the event that Trustor is an entity rather then a natural person, Trustor shall not change or dissolve its status without the prior written approval of Beneficiary, which shall not be unreasonably withheld. Any single transfer, whether by operation of law or otherwise, of more than ten percent (10%), or an aggregate total of more than twenty five percent (25%) of any equity, capital, ownership, profits or voting interest in the entity that is the Trustor (whether stock, partnership interest or otherwise, and aggregating the current transfer with all previous transfers occurring after the date of this Deed of Trust) shall be deemed a Transfer of the Property for purposes of this Section.

## B:        IT IS MUTUALLY AGREED:

1.        That any award of damages in connection with any condemnation or any taking, or for injury to the property by reason of public use, or for damages for private trespass or injury thereto, is assigned and shall be paid to Beneficiary as further security for all obligations secured hereby (reserving unto Trustor, however, the right to sue therefore and the ownership thereof, subject to this Deed of Trust), and upon receipt of such monies, Beneficiary may hold the same as such further security, or apply or release the same in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

2.        That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to pay. Without affecting the obligation of Trustor to pay and perform as herein required, without affecting the personal liability of any person for payment of the indebtedness secured hereby, and without affecting the lien or priority of lien hereof on the Trust Property, Beneficiary may, at its option, extend the time for payment of said indebtedness, any part hereof, reduce the payment thereon, release any person liable on any of said indebtedness, accept a renewal note therefore, modify the terms of said indebtedness take or release other or additional security, or join in any extension or subordination agreement. Any such action by Beneficiary or Trustee at Beneficiary's direction may be taken without the consent of any junior lienholder, and shall not affect the priority of the Deed of Trust over any junior lien. Time is of the essence of this Deed of Trust.

3.        That at any time, or from time to time and without notice, upon written request of  Beneficiary and presentations of this Deed of Trust and said note(s) for endorsement, and without liability therefore, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, and

without affecting the security hereof for the full amount secured hereby on all property remaining subject hereto, and without the necessity that any sum representing the value or any portion thereof of the property affected by Trustee's action be credited on the indebtedness, Trustee may: (a) release and reconvey all or any part of said property; (b) consent to the making and recording, or either, of any map or plat of the property or any part thereof; (c) join in granting any easement thereon; (d) join in or consent to any extension agreement of any agreement subordinating the lien, encumbrance or charge hereof. Any Trustor signing this Deed of Trust as a surety or accommodation party or that has subjected its property to this Deed of Trust to secure the debt of another, expressly waives the benefits of A.R.S. Section 12-1641.

4.    That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and said note(s) to Trustee for cancellation and retention, and upon payment of its fees, Trustee shall release and reconvey, without covenant or warranty, express or implied, the property then held hereunder, and the recitals in such reconveyance, of any matters or facts, shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

5.    That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power, and authority, during the continuance of this Deed of Trust, to collect the property income, reserving to Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such property income as it becomes due and payable. Upon any such default Beneficiary may at any time, without notice either by person, by agent, or by receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured or the solvency of Trustor, enter upon and take possession of said property or any part thereof, in its own name sue for or otherwise collect such property income, including that past due and unpaid, and apply same, less costs and expenses of operation and collection, including reasonable attorney's fees of Beneficiary and Trustee, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.

Unofficial Document

The entering upon and taking possession of said property, the collection of such property income, and the application thereof as aforesaid, shall not cure or waive any default or Notice of Trustee's Sale hereunder or invalidate any act done pursuant to such Notice. Beneficiary shall expressly have all rights provided for in A.R.S. Sections 33-702B and 33-807.

6.    That upon default by Trustor in the payment of any indebtedness secured hereby, or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written notice thereof, setting forth the nature thereof, and of election to cause to be sold said property under this Deed of Trust. Beneficiary also shall deposit with Trustee this Deed of Trust, said Note(s), and all documents evidencing expenditures secured hereby.

Trustee shall record and give Notice of Trustee's Sale and give notice thereof in the manner required by law, and after the lapse of such time as may then be required by law, Trustee shall sell, in the manner required by law, said property at public auction at the time and place fixed by it in said Notice of Trustee's Sale, to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee, at its discretion, may postpone or continue the sale from time to time by giving notice of postponement or continuance by public declaration at the time and place last appointed for the sale. Trustee shall deliver to such purchaser its Deed conveying the property so sold, but without any covenant or warranty, expressed or implied. Any persons, including Trustor, Trustee, or Beneficiary, may purchase at such sale. The purchaser at Trustee's sale shall be entitled to immediate possession of the property as against Trustee or other persons in possession and shall have right to the summary proceedings to obtain possession provided in Title 12, Chapter 8, Article 4, A.R.S., together with costs and reasonable attorney's fees.

After deducting all costs, fees, and expenses of Trustee and of this Deed of Trust, including cost of evidence of title in connection with sale and reasonable attorney's fees of Beneficiary and Trustee, Trustee shall apply the proceeds of sale to payment of: all sums then secured hereby and all other sums due under the terms

hereof, with accrued interest, and the remainder, if any, to the person or persons legally entitled thereto, or as provided in A.R.S. Section 33-812. To the extent permitted by law, an action may be maintained by Beneficiary to recover a deficiency judgment for any balance due hereunder. In lieu of sale pursuant to the power of sale conferred hereby, this Deed of Trust may be foreclosed in the same manner provided by law for the foreclosure of mortgages on real property. Beneficiary shall also have all other rights and remedies available to it hereunder and at law or in equity. All rights and remedies shall be cumulative.

      7.    That Beneficiary may appoint a Successor Trustee in the manner prescribed by law. Trustor and Beneficiary authorize Trustee, in the event any demand or notice is made or tendered to it concerning this Deed of Trust or the property, to hold any money and documents and to withhold action or performance until an action shall be brought in a court of competent jurisdiction to determine the rights asserted or the property of the demand, notice or action requested, and Trustee shall be without liability or responsibility for awaiting such court action. A Successor Trustee herein shall, without conveyance from the predecessor Trustee, succeed to all the predecessor's title, estate, rights, powers, and duties. Trustee may resign at any time by mailing or delivering notice thereof to Beneficiary and Trustor and having so resigned, shall be relieved of all liability and responsibility to Trustor, Beneficiary or otherwise hereunder. "Trustee" herein shall include all successor trustees. Trustee shall not be liable for any action taken in its discretion and in good faith, or upon advice of counsel, or upon any information supplied or direction given by Beneficiary. Unless Trustee is adjudged grossly negligent or guilty of intentional wrongdoing or breach of contract, Trustor and Beneficiary will, upon demand, indemnify and hold harmless Trustee against all costs, damages, attorney's fees, expenses and liabilities which it may occur or sustain in connection with this Deed of Trust or any foreclosure or sale hereof or any count or other action or proceeding arising herefrom.

      8.    That this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term "Beneficiary" shall mean the owner and holder of the note(s) secured hereby, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so required, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

      9.    That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made public record as provided by law. Trustee may, but is not obligated to, notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary, or Trustee shall be a party unless brought by Trustee.

      The undersigned Trustor requests that a copy of any notice of Trustee's sale hereunder be mailed to him at his address set forth herein.

TRUSTOR: Atlantico Professional Services, LLC

**SIGNATURE OF TRUSTOR:**

SIGNATURE: _____    _____
    Gustave Ramirez Freer, member    Irma G. Murcia, member

STATE OF _____
    ) ss.
COUNTY OF _____)

The foregoing instrument was acknowledged before me, the undersigned Notary Public, by Gustave Ramirez Freer, member of Atlantico Professional Services, LLC and Irma G. Murcia, member of Atlantico Professional Services, LLC, this ___ day of _____ JULY _____, 20__.

_____
Notary Public

BEATRICE ZUNIGA
County of Maricopa
Notary Public
My Commission Expires
October 13, 2013

EXHIBIT "A"

**LOT 30, KAUFMAN AND BROAD AT THE VINEYARDS, A SUBDIVISION RECORDED IN BOOK 377 OF MAPS, PAGE 50, AND AFFIDAVIT OF CORRECTION RECORDED IN DOCUMENT NO. 94-0482074, RECORDS OF MARICOPA COUNTY, ARIZONA.**

Unofficial Document

# Exhibit 15

# June 27, 2013 Deed of Trust

**Great American Title Agency**

50
Ho

Recorded at the Request of:
When Recorded, mail to:

Capstone Financial
6900 E. Camelback Rd..
Suite 575
Scottsdale, AZ 85251

504260-204-LP2    /2

## DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST, made 06/27/2013, between CTP Funding, LLC, an Arizona limited liability company DBA Capstone Financial , herein called 'BENEFICIARY', whose address is 6900 E. Camelback Rd.., Suite 575, Scottsdale, AZ 85251, and Statewide Foreclosure Services, Inc., an Arizona corporation, whose mailing address is 2741 W. Southern Ave., #2, Tempe, AZ 85282, herein called 'TRUSTEE', and ATLANTICO PROFESSIONAL SERVICES, LLC, an Arizona limited liability company, herein called 'TRUSTOR', whose address is 4219 North 99th Lane, Phoenix, Arizona 85037, on that property located in Maricopa County, State of Arizona, described as follows:

LOT 30, KAUFMAN AND BROAD AT THE VINEYARDS, A SUBDIVISION RECORDED IN BOOK 377 OF MAPS, PAGE 50, AND AFFIDAVIT OF CORRECTION RECORDED IN DOCUMENT NO. 94-0482074, RECORDS OF MARICOPA COUNTY, ARIZONA.

APN: 102-82-798

The property address is purported to be: 4219 North 99th Lane, Phoenix, Arizona 85037,

Together with all buildings, improvements, and fixtures thereon.

THIS DEED OF TRUST, made on the above date between the Trustor, Trustee and Beneficiary above named.

WITNESSETH: That Trustor irrevocably grants, conveys, transfers and assigns to Trustee in Trust, with Power of Sale, the above described real property, together with leases, rents, profits, or income thereof, (all of which are hereinafter called "property income") SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such property income: AND SUBJECT TO existing taxes, assessments, liens encumbrances, covenants, conditions, restrictions, rights-of-way, and easements of record.

FOR THE PURPOSE OF SECURING:
A. Performance of each agreement of Trustor herein contained.
B. Payment of the indebtedness evidenced by promissory note or notes of even date herewith including provisions within these notes for payments by Trustor of impounds for estimated annual taxes, assessments, and insurance, and any extension, renewal or modification thereof, in the principal sum of Fifty-nine Thousand, Five Hundred and no/100 dollars ($59,500.00) executed by Trustor in favor of Beneficiary or order.
C. Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:
(1) Trustor shall keep said property in good condition and repair; shall not remove or demolish any building thereon, shall complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and shall pay when due all claims for

labor performed and materials furnished therefore; shall comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; shall not commit or permit waste thereof; shall not commit, suffer or permit any act upon said property in violation of law; shall cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) Trustor shall keep all improvements now or hereafter erected on said property continuously insured against loss by fire or other hazards in an amount not less than the total obligation secured hereby. All policies shall be held by the Beneficiary and be in such companies as the Beneficiary may approve and have loss payable first to the Beneficiary as his interest may appear and then to the Trustor. The amount collected under any insurance policy may be applied upon any indebtedness hereby secured and in such order as the Beneficiary may determine or at option of the Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder nor cause discontinuance of any action that may have been or may thereafter be taken by Beneficiary or Trustee because of such default.

(3) Trustor shall appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Beneficiary or Trustee; and shall pay all costs and expenses of Beneficiary and Trustee, including cost of evidence of title and attorney's fees in a reasonable sum in such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this DEED OF TRUST.

(4) Trustor shall pay: at least ten days before delinquency all taxes and assessments affecting said property unless otherwise provided for through the collection of Impounds by Beneficiary; when due, all encumbrances, charges and liens, with interest, on property or any part thereof, which appear to be prior or superior hereto; when due, all costs, fees and expenses of this Trust, including, without limiting the generality of the foregoing, the fees of Trustee for issuance of any DEED OF PARTIAL RELEASE and PARTIAL RECONVEYANCE or DEED OF RELEASE and FULL RECONVEYANCE and all lawful charges, costs and expenses in the event of reinstatement of, following default in, this DEED OF TRUST or the obligations secured hereby.

(5) Should Trustor fail to make any payment or to do any act as provided in this DEED OF TRUST, then the Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may; make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgement of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees. Trustor shall pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expending at the rates provided in the promissory note(s) secured by this DEED OF TRUST.

IT IS MUTUALLY AGREED:

(6) That any award of damages in connection with any condemnation or any such taking, or for injury to the property by reason of public use, or for damages for private trespass or injury thereto, is assigned and shall be paid to Beneficiary as further security for all obligations secured hereby (reserving unto the Trustor, however, the right to sue therefore and the ownership thereof subject to this DEED OF TRUST) and upon receipt of such monies Beneficiary may hold the same as such further security, or apply or release the same in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That time is of the essence of this DEED OF TRUST, and that by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) At any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this DEED OF TRUST and said note(s) for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, and upon payment if its fees, Trustee may (A) by DEED OF PARTIAL RELEASE AND PARTIAL RECONVEYANCE release and reconvey, without covenant or warranty, express or implied, any portion(s) of the property then held hereunder; the recitals in such DEED OF PARTIAL RELEASE and PARTIAL RECONVEYANCE of any matters shall be conclusive proof of the truthfulness thereof; the grantee in such

DEED OF PARTIAL RELEASE and PARTIAL RECONVEYANCE may be described as "The Person or Persons Legally Entitled Thereto," (B) consent to the making of any map or plat thereof; (C) join in granting any easement thereon; or (D) join in any extension agreement or any agreement subordinating the lien or charge hereof. Beneficiary shall execute his release upon such DEED if so requested by Trustee.

(9) Upon written request of Beneficiary stating that all sums secured hereby have been paid and upon surrender of this DEED OF TRUST and said note(s) to Trustee for cancellation and retention and upon payment of its fees, Trustee shall by DEED OF RELEASE and FULL RECONVEYANCE release and reconvey, without covenants or warranty, express or implied, the property then held hereunder. The recitals in such DEED OF RELEASE and FULL RECONVEYANCE of any matters shall be conclusive proof of the truthfulness thereof. The grantee in such DEED OF RELEASE and FULL RECONVEYANCE may be described as "The Person or Persons Legally Entitled Thereto."

(10) As additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority during the continuance of this Trust, to collect the Property income, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such Property Income as it becomes due and payable. Upon such default, Beneficiary may at any time without notice, either in person by agent, or by a receiver to be appointed by a court, and without regard to the adequacy or any security for the indebtedness hereby secured, or the solvency of the Trustor, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such Property Income, including that past due and unpaid, and apply the same, less costs and expenses of operation and collection including reasonable attorney's fees, upon taking possession of said property.

The collection of such Property Income and the application thereof, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in the payment of any indebtedness secured hereby, in performance of any agreement hereunder, or in payment or performance of any other agreement, deed of trust or loan that Trustor has with Beneficiary, time being of the essence with respect to such payment and/or performance, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written notice thereof, setting forth the nature thereof, and of election to cause to be sold said property under this DEED OF TRUST. Beneficiary also shall deposit with Trustee this DEED OF TRUST, said note(s), and all documents evidencing expenditures secured hereby.

Trustee shall record and give notice of Trustee's sale in the manner required by law, and after the lapse of such time as may then be required by law, Trustee shall sell, in the manner required by law, said property at public auction at the time and place fixed by it in said notice of Trustee's sale to the highest bidder for cash or lawful money of the United States, payable at time of sale. Trustee may postpone or continue the sale by giving notice of postponement or continuance by public declaration at the time and place last appointed for the sale. Trustee shall deliver to such purchaser its Deed conveying the property so sold, but without any covenant or warranty, express or implied. Any persons, including Trustor, Trustee, or Beneficiary, may purchase at such sale.

After deducting all costs, fees, and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale and reasonable attorney's fees, Trustee shall apply the proceeds of sale to payment of: All sums then secured hereby and all other sums due under the terms hereof, with accrued interest; and the remainder, if any, to the person or persons legally entitled thereto, or as provided in A.R.S. 33-812. To the extent permitted by law, an action may be maintained by Beneficiary to recover a deficiency judgment for any balance due hereunder. The purchaser at the Trustee's sale shall be entitled to immediate possession of the property against the Trustor and shall have a right to the summary proceedings to obtain a possession provided in Title 12, Chapter 8, Article 4, Arizona Revised Statutes, together with costs and reasonable attorneys' fees.

In the alternative to foreclosure by Trustee's Sale, the Beneficiary may foreclose by Judicial proceedings, and in such event, the election to declare the unpaid balance immediately due and payable may be made in the complaint. In such Judicial proceedings Beneficiary shall be entitled to reasonable attorney's fees, costs of foreclosure report and all sums advanced with interest, as provided under paragraphs four (4) and five (5) herein.

(12) That Beneficiary may appoint a successor Trustee in the manner prescribed by law. A successor Trustee herein shall, without conveyance from the predecessor Trustee, succeed to all the

predecessor's title, estate, rights, powers and duties. Trustee may resign by mailing or delivering notice thereof to Beneficiary and Trustor.

(13) That this DEED OF TRUST applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns. The term Beneficiary shall mean the owner and holder of the note(s) secured hereby, whether or not named as Beneficiary herein. In this DEED OF TRUST, whenever the context so requires, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

(14) Trustee accepts this trust when this DEED OF TRUST, duly executed and acknowledged, is made public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other DEED OF TRUST or of any action or proceeding in which Trustor, Beneficiary, or Trustee shall be a party unless brought by Trustee. In the event Trustee is made a party in any legal or court proceeding as a result of litigation between the Trustor and Beneficiary or between a third party and either or both of Trustor and/or Beneficiary, the attorney's fees and costs of Trustee shall be paid by either Trustor or Beneficiary, whichever being the non prevailing party.

(15) Time is of the essence of this DEED OF TRUST and each and every provision hereof.

(16) Trustor and Beneficiary agree that the trust relationship created by this instrument is strictly limited to the creation and enforcement of a security interest in real property. Thus, all Trustee's duties, fiduciary or otherwise, are strictly limited to those imposed by this document and A.R.S. 33-801 through 33-821, inclusive, and no additional duties, burdens or responsibilities shall be placed on the Trustee.

(17) The Trustor requests that a copy of any Notice of Trustee's Sale hereunder be mailed to him at his address hereinbefore set forth. All notices required hereby shall be sent to the addresses indicated above unless such party shall have recorded a Request for Notice pursuant to A.R.S. 33-809A in the county recorder's office of the county where the property encumbered hereby is located, indicating a different address.

(18) This Deed of trust, when recorded, shall operate as a declaration of abandonment of any homestead previously recorded concerning the property described herein.

ADDITIONAL TERMS AND CONDITIONS:

(19) Trustor warrants it has good and marketable title to the Property, free and clear of all liens, encumbrances and other title exceptions except those approved exceptions set forth with the description of the Property. Trustor warrants to defend the title to the Property against all claims and demands, subject to the approved exceptions. Trustor agrees that any greater title to the Property hereafter acquired by Trustor shall be subject hereto. This Deed of Trust is free from all homestead, valuation and exemption rights and benefits whatsoever, which Trustor hereby waives.

(20) In addition to the insurance required to be maintained in paragraph 2 hereof, Trustor shall maintain "extended coverage-all risk" insurance as well as "comprehensive general liability" insurance against claims for bodily injury, death or property damage occurring in, on or about the Property, naming Beneficiary as insured, such insurance to afford protection of not less than those amounts as are acceptable to Beneficiary but Beneficiary shall have no obligation, duty or liability as to the adequacy of such amounts. All such liability insurance policies shall provide that the insurance cannot be invalidated as to the interest of Beneficiary by any act or negligence of any person owning the Property, by foreclosure or other proceedings or notice of sale or by any change in the title or ownership of the Property or by occupation of any insured structures for purposes more hazardous than permitted by such policies.

(21) Beneficiary may make or cause to be made reasonable entries upon the Property for purposes of inspecting the Property at any time with reasonable notice to Trustor, except in case of emergency when entry may be made without notice.

(22) Trustor shall not sell, assign, transfer, convey, mortgage, pledge, hypothecate or otherwise dispose of or encumber (by agreement, operation of law or otherwise) the Property or any interest therein, or any part thereof, without the prior written consent of Beneficiary. Any such event without Beneficiary's prior written approval shall constitute an "event of default" under this Deed of Trust. If an "event of default" shall occur, the Promissory Note for which this Deed of Trust is security, shall, at the sole option of the Holder of the Note and without further notice or demand of any kind be immediately all due and payable.

(23) Trustor hereby waives trial by jury in any litigation arising out of or in any way related to or connected with the loan secured hereby or this Deed of Trust to the fullest extent permitted by applicable law.

(24) Trustor represents and warrants that to its actual knowledge: (a) No Hazardous Materials have been, are or will be used, generated, stored or disposed of on, under or about the Property and (b) the Property and all past, present and future uses thereof were, are and will be in compliance with all relative local, state and federal laws, rules, regulations, policies, ordinances, court decisions, settlement orders and consent decrees relating to the protection of the environment on, under or about the Property (the "Hazardous Materials Laws"). Trustor shall comply at Trustor's expense and cause any tenants of the Property to comply with such Hazardous Materials Laws. In the event any Hazardous Materials are found to exist on, under or about the Property, Trustor shall at Trustor's expense take all necessary and appropriate remedial action that Beneficiary or any relevant authority shall require. Trustor shall immediately advise Beneficiary in writing of any governmental or regulatory communications or proposed or instituted actions with regard to Hazardous Materials and the Property, and shall immediately provide Beneficiary with copies of any written communication to and from such authorities. Upon any default, Beneficiary shall have the right at Trustor's expense to obtain or require Trustor to obtain an environmental survey or study of the Property from a qualified independent environmental engineer, all to the satisfaction of Beneficiary. In order to induce Beneficiary to make the loan secured by this Deed of Trust, Trustor agrees to and does hereby indemnify and hold Beneficiary and Trustee harmless from any liability, loss, costs, damages, and expenses (including attorneys' fees) Beneficiary or Trustee may sustain in any way related to any Hazardous Materials on, under, or about the Property. This indemnity shall survive any foreclosure or deed in lieu of the Property and benefit any foreclosure purchaser thereof and shall not be subject to any otherwise applicable statutory anti-deficiency limitation or nonrecourse provision. For purposes of this paragraph, Hazardous Materials shall mean: (i) any chemical, material or substance defined or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," "toxic substances" or words of similar import under any Hazardous Material Laws, (ii) any oil, petroleum, flammable substances, explosive, asbestos or, (iii) any other chemical, material or substance which may or could pose a hazard to health or safety.

(25) If and to the extent that there is more than one Trustor, each such Trustor hereby agrees that such Trustor is liable for the obligations evidenced by this Deed of Trust, jointly and severally with each other Trustor, and that Beneficiary may pursue any rights and/or remedies set forth in this Deed of Trust either against all Trustors jointly, or against each Trustor on an individual basis, until all such remedies are exhausted and all obligations owed to Beneficiary and secured by this Deed of Trust have been paid and performed in full.

(26) Upon demand by the Beneficiary, the Trustor will pay monthly to the Beneficiary an amount equal to $1/12^{th}$ of the estimated annual cost of taxes, assessments and hazard and other required insurance premiums on the Property. The accumulated funds will be applied by the Beneficiary to the payment of such taxes, assessments and insurance premiums. If there are not sufficient accumulated funds to pay such taxes, assessments and insurance premium as they become due, the Trustor shall, upon demand, immediately pay the amount necessary to make up such deficiency. No interest will be paid on the accumulated funds by the Beneficiary to the Trustor, unless otherwise required by applicable law. Upon an Event of Default, the Beneficiary may apply the accumulated funds to the obligations in whatever order the Beneficiary elects. However, no such application of the accumulated funds shall cure an Event of Default

(27) Notwithstanding the date of execution of this Deed of Trust or the Note secured hereby, the obligations of Trustor to Beneficiary evidenced by this Deed of Trust shall begin to accrue as of the date set forth on the first page of this Deed of Trust.

[the balance of this page intentionally left blank]

.

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust effective as of 06/27/2013.

DATED this *21* day of *June*, 2013

Trustor: ATLANTICO PROFESSIONAL SERVICES, LLC
an Arizona limited liability company

By: GUSTAVO RAMIREZ FREER

Its: Member

_____
GUSTAVO RAMIREZ FREER, Member

_____
Irma Murcia, Member

State of _____ )
                          ) ss
County of _____ )

This instrument was acknowledged before me this *27* day of *June*, 2013 by Gustavo Ramirez Freer and Irma Murcia as Members of Atlantico Professional Services, LLC, an Arizona limited liability company who acknowledged that he executed the foregoing instrument for the purposes contained therein.

IN WITNESS WHEREOF, I hereunto set my official hand and seal.

_____
Notary Public

My Commission Expires:



OFFICIAL SEAL
GUADALUPE M. PENA
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Nov. 5, 2014

---

NOTE: The parties are cautioned that by completing and executing this document, legal rights, duties and obligations are created. By signing, the parties acknowledge that they have been advised to seek and obtain independent legal counsel as to all matters contained in the within document prior to signing same and that said parties have obtained advice or choose to proceed without same.

# Exhibit 16

# June 27, 2013 Deed of Trust

**Great American Title Agency**

Recorded at the Request of:
When Recorded, mail to:

50·
Ho·

Capstone Financial
6900 E. Camelback Rd..
Suite 575
Scottsdale, AZ 85251

50ʔꝲꝲꝺꝺ-204-ᏝᏝᏝ  2/2

### DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST, made 06/27/2013, between CTP Funding, LLC, an Arizona limited liability company DBA Capstone Financial , herein called 'BENEFICIARY', whose address is 6900 E. Camelback Rd.., Suite 575, Scottsdale, AZ 85251, and Statewide Foreclosure Services, Inc., an Arizona corporation, whose mailing address is 2741 W. Southern Ave., #2, Tempe, AZ 85282, herein called 'TRUSTEE', and ATLANTICO PROFESSIONAL SERVICES, LLC, an Arizona limited liability company, herein called 'TRUSTOR', whose address is 4219 North 99th Lane, Phoenix, Arizona 85037, on that property located in Maricopa County, State of Arizona, described as follows:

LOT 30, KAUFMAN AND BROAD AT THE VINEYARDS, A SUBDIVISION RECORDED IN BOOK 377 OF MAPS, PAGE 50, AND AFFIDAVIT OF CORRECTION RECORDED IN DOCUMENT NO. 94-0482074, RECORDS OF MARICOPA COUNTY, ARIZONA.

APN: 102-82-798

The property address is purported to be: 4219 North 99th Lane, Phoenix, Arizona 85037,

Together with all buildings, improvements, and fixtures thereon.

THIS DEED OF TRUST, made on the above date between the Trustor, Trustee and Beneficiary above named.

WITNESSETH: That Trustor irrevocably grants, conveys, transfers and assigns to Trustee in Trust, with Power of Sale, the above described real property, together with leases, rents, issues, profits, or income thereof, (all of which are hereinafter called "property income") SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such property income: AND SUBJECT TO existing taxes, assessments, liens encumbrances, covenants, conditions, restrictions, rights-of-way, and easements of record.

FOR THE PURPOSE OF SECURING:
A.  Performance of each agreement of Trustor herein contained.
B.  Payment of the indebtedness evidenced by promissory note or notes of even date herewith including provisions within these notes for payments by Trustor of impounds for estimated annual taxes, assessments, and insurance, and any extension, renewal or modification thereof, in the principal sum of Five Thousand, One Hundred Twenty-four and no/100 dollars ($5,124.00) executed by Trustor in favor of Beneficiary or order.
C.  Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:
        (1) Trustor shall keep said property in good condition and repair; shall not remove or demolish any building thereon, shall complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and shall pay when due all claims for labor performed and materials furnished therefore; shall comply with all laws affecting said property or

requiring any alterations or improvements to be made thereon; shall not commit or permit waste thereof; shall not commit, suffer or permit any act upon said property in violation of law; shall cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) Trustor shall keep all improvements now or hereafter erected on said property continuously insured against loss by fire or other hazards in an amount not less than the total obligation secured hereby. All policies shall be held by the Beneficiary and be in such companies as the Beneficiary may approve and have loss payable first to the Beneficiary as his interest may appear and then to the Trustor. The amount collected under any insurance policy may be applied upon any indebtedness hereby secured and in such order as the Beneficiary may determine or at option of the Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder nor cause discontinuance of any action that may have been or may thereafter be taken by Beneficiary or Trustee because of such default.

(3) Trustor shall appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Beneficiary or Trustee; and shall pay all costs and expenses of Beneficiary and Trustee, including cost of evidence of title and attorney's fees in a reasonable sum in such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this DEED OF TRUST.

(4) Trustor shall pay: at least ten days before delinquency all taxes and assessments affecting said property unless otherwise provided for through the collection of Impounds by Beneficiary; when due, all encumbrances, charges and liens, with interest, on property or any part thereof, which appear to be prior or superior hereto; when due, all costs, fees and expenses of this Trust, including, without limiting the generality of the foregoing, the fees of Trustee for issuance of any DEED OF PARTIAL RELEASE and PARTIAL RECONVEYANCE or DEED OF RELEASE and FULL RECONVEYANCE and all lawful charges, costs and expenses in the event of reinstatement of, following default in, this DEED OF TRUST or the obligations secured hereby.

(5) Should Trustor fail to make any payment or to do any act as provided in this DEED OF TRUST, then the Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may; make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgement of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees. Trustor shall pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expending at the rates provided in the promissory note(s) secured by this DEED OF TRUST.

IT IS MUTUALLY AGREED:

(6) That any award of damages in connection with any condemnation or any such taking, or for injury to the property by reason of public use, or for damages for private trespass or injury thereto, is assigned and shall be paid to Beneficiary as further security for all obligations secured hereby (reserving unto the Trustor, however, the right to sue therefore and the ownership thereof subject to this DEED OF TRUST) and upon receipt of such monies Beneficiary may hold the same as such further security, or apply or release the same in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That time is of the essence of this DEED OF TRUST, and that by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) At any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this DEED OF TRUST and said note(s) for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, and upon payment if its fees, Trustee may (A) by DEED OF PARTIAL RELEASE AND PARTIAL RECONVEYANCE release and reconvey, without covenant or warranty, express or implied, any portion(s) of the property then held hereunder; the recitals in such DEED OF PARTIAL RELEASE and PARTIAL RECONVEYANCE of any matters shall be conclusive proof of the truthfulness thereof; the grantee in such DEED OF PARTIAL RELEASE and PARTIAL RECONVEYANCE may be described as "The Person or

Persons Legally Entitled Thereto," (B) consent to the making of any map or plat thereof; (C) join in granting any easement thereon; or (D) join in any extension agreement or any agreement subordinating the lien or charge hereof. Beneficiary shall execute his release upon such DEED if so requested by Trustee.

(9) Upon written request of Beneficiary stating that all sums secured hereby have been paid and upon surrender of this DEED OF TRUST and said note(s) to Trustee for cancellation and retention and upon payment of its fees, Trustee shall by DEED OF RELEASE and FULL RECONVEYANCE release and reconvey, without covenants or warranty, express or implied, the property then held hereunder. The recitals in such DEED OF RELEASE and FULL RECONVEYANCE of any matters shall be conclusive proof of the truthfulness thereof. The grantee in such DEED OF RELEASE and FULL RECONVEYANCE may be described as "The Person or Persons Legally Entitled Thereto."

(10) As additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority during the continuance of this Trust, to collect the Property income, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such Property Income as it becomes due and payable. Upon such default, Beneficiary may at any time without notice, either in person by agent, or by a receiver to be appointed by a court, and without regard to the adequacy or any security for the indebtedness hereby secured, or the solvency of the Trustor, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such Property Income, including that past due and unpaid, and apply the same, less costs and expenses of operation and collection including reasonable attorney's fees, upon taking possession of said property.

The collection of such Property Income and the application thereof, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in the payment of any indebtedness secured hereby, in performance of any agreement hereunder, or in payment or performance of any other agreement, deed of trust or loan that Trustor has with Beneficiary, time being of the essence with respect to such payment and/or performance. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written notice thereof, setting forth the nature thereof, and of election to cause to be sold said property under this DEED OF TRUST. Beneficiary also shall deposit with Trustee this DEED OF TRUST, said note(s), and all documents evidencing expenditures secured hereby.

Trustee shall record and give notice of Trustee's sale in the manner required by law, and after the lapse of such time as may then be required by law, Trustee shall sell, in the manner required by law, said property at public auction at the time and place fixed by it in said notice of Trustee's sale to the highest bidder for cash or lawful money of the United States, payable at time of sale. Trustee may postpone or continue the sale by giving notice of postponement or continuance by public declaration at the time and place last appointed for the sale. Trustee shall deliver to such purchaser its Deed conveying the property so sold, but without any covenant or warranty, express or implied. Any persons, including Trustor, Trustee, or Beneficiary, may purchase at such sale.

After deducting all costs, fees, and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale and reasonable attorney's fees, Trustee shall apply the proceeds of sale to payment of: All sums then secured hereby and all other sums due under the terms hereof, with accrued interest; and the remainder, if any, to the person or persons legally entitled thereto, or as provided in A.R.S. 33-812. To the extent permitted by law, an action may be maintained by Beneficiary to recover a deficiency judgment for any balance due hereunder. The purchaser at the Trustee's sale shall be entitled to immediate possession of the property against the Trustor and shall have a right to the summary proceedings to obtain a possession provided in Title 12, Chapter 8, Article 4, Arizona Revised Statutes, together with costs and reasonable attorneys' fees.

In the alternative to foreclosure by Trustee's Sale, the Beneficiary may foreclose by Judicial proceedings, and in such event, the election to declare the unpaid balance immediately due and payable may be made in the complaint. In such Judicial proceedings Beneficiary shall be entitled to reasonable attorney's fees, costs of foreclosure report and all sums advanced with interest, as provided under paragraphs four (4) and five (5) herein.

(12) That Beneficiary may appoint a successor Trustee in the manner prescribed by law. A successor Trustee herein shall, without conveyance from the predecessor Trustee, succeed to all the predecessor's title, estate, rights, powers and duties. Trustee may resign by mailing or delivering notice thereof to Beneficiary and Trustor.

(13) That this DEED OF TRUST applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns. The term Beneficiary shall mean the owner and holder of the note(s) secured hereby, whether or not named as Beneficiary herein. In this DEED OF TRUST, whenever the context so requires, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

(14) Trustee accepts this trust when this DEED OF TRUST, duly executed and acknowledged, is made public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other DEED OF TRUST or of any action or proceeding in which Trustor, Beneficiary, or Trustee shall be a party unless brought by Trustee. In the event Trustee is made a party in any legal or court proceeding as a result of litigation between the Trustor and Beneficiary or between a third party and either or both of Trustor and/or Beneficiary, the attorney's fees and costs of Trustee shall be paid by either Trustor or Beneficiary, whichever being the non prevailing party.

(15) Time is of the essence of this DEED OF TRUST and each and every provision hereof.

(16) Trustor and Beneficiary agree that the trust relationship created by this instrument is strictly limited to the creation and enforcement of a security interest in real property. Thus, all Trustee's duties, fiduciary or otherwise, are strictly limited to those imposed by this document and A.R.S. 33-801 through 33-821, inclusive, and no additional duties, burdens or responsibilities shall be placed on the Trustee.

(17) The Trustor requests that a copy of any Notice of Trustee's Sale hereunder be mailed to him at his address hereinbefore set forth. All notices required hereby shall be sent to the addresses indicated above unless such party shall have recorded a Request for Notice pursuant to A.R.S. 33-809A in the county recorder's office of the county where the property encumbered hereby is located, indicating a different address.

(18) This Deed of trust, when recorded, shall operate as a declaration of abandonment of any homestead previously recorded concerning the property described herein.

ADDITIONAL TERMS AND CONDITIONS:

(19) Trustor warrants it has good and marketable title to the Property, free and clear of all liens, encumbrances and other title exceptions except those approved exceptions set forth with the description of the Property. Trustor warrants to defend the title to the Property against all claims and demands, subject to the approved exceptions. Trustor agrees that any greater title to the Property hereafter acquired by Trustor shall be subject hereto. This Deed of Trust is free from all homestead, valuation and exemption rights and benefits whatsoever, which Trustor hereby waives.

(20) In addition to the insurance required to be maintained in paragraph 2 hereof, Trustor shall maintain "extended coverage-all risk" insurance as well as "comprehensive general liability" insurance against claims for bodily injury, death or property damage occurring in, on or about the Property, naming Beneficiary as insured, such insurance to afford protection of not less than those amounts as are acceptable to Beneficiary but Beneficiary shall have no obligation, duty or liability as to the adequacy of such amounts. All such liability insurance policies shall provide that the insurance cannot be invalidated as to the interest of Beneficiary by any act or negligence of any person owning the Property, by foreclosure or other proceedings or notice of sale or by any change in the title or ownership of the Property or by occupation of any insured structures for purposes more hazardous than permitted by such policies.

(21) Beneficiary may make or cause to be made reasonable entries upon the Property for purposes of inspecting the Property at any time with reasonable notice to Trustor, except in case of emergency when entry may be made without notice.

(22) Trustor shall not sell, assign, transfer, convey, mortgage, pledge, hypothecate or otherwise dispose of or encumber (by agreement, operation of law or otherwise) the Property or any interest therein, or any part thereof, without the prior written consent of Beneficiary. Any such event without Beneficiary's prior written approval shall constitute an "event of default" under this Deed of Trust. If an "event of default" shall occur, the Promissory Note for which this Deed of Trust is security, shall, at the sole option of the Holder of the Note and without further notice or demand of any kind be immediately all due and payable.

(23) Trustor hereby waives trial by jury in any litigation arising out of or in any way related to or connected with the loan secured hereby or this Deed of Trust to the fullest extent permitted by applicable law.

(24) Trustor represents and warrants that to its actual knowledge: (a) No Hazardous Materials have been, are or will be used, generated, stored or disposed of on, under or about the Property and (b) the

Property and all past, present and future uses thereof were, are and will be in compliance with all relative local, state and federal laws, rules, regulations, policies, ordinances, court decisions, settlement orders and consent decrees relating to the protection of the environment on, under or about the Property (the "Hazardous Materials Laws"). Trustor shall comply at Trustor's expense and cause any tenants of the Property to comply with such Hazardous Materials Laws. In the event any Hazardous Materials are found to exist on, under or about the Property, Trustor shall at Trustor's expense take all necessary and appropriate remedial action that Beneficiary or any relevant authority shall require. Trustor shall immediately advise Beneficiary in writing of any governmental or regulatory communications or proposed or instituted actions with regard to Hazardous Materials and the Property, and shall immediately provide Beneficiary with copies of any written communication to and from such authorities. Upon any default, Beneficiary shall have the right at Trustor's expense to obtain or require Trustor to obtain an environmental survey or study of the Property from a qualified independent environmental engineer, all to the satisfaction of Beneficiary. In order to induce Beneficiary to make the loan secured by this Deed of Trust, Trustor agrees to and does hereby indemnify and hold Beneficiary and Trustee harmless from any liability, loss, costs, damages, and expenses (including attorneys' fees) Beneficiary or Trustee may sustain in any way related to any Hazardous Materials on, under, or about the Property. This indemnity shall survive any foreclosure or deed in lieu of the Property and benefit any foreclosure purchaser thereof and shall not be subject to any otherwise applicable statutory anti-deficiency limitation or nonrecourse provision. For purposes of this paragraph, Hazardous Materials shall mean: (i) any chemical, material or substance defined or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," "toxic substances" or words of similar import under any Hazardous Material Laws, (ii) any oil, petroleum, flammable substances, explosive, asbestos or, (iii) any other chemical, material or substance which may or could pose a hazard to health or safety.

(25) If and to the extent that there is more than one Trustor, each such Trustor hereby agrees that such Trustor is liable for the obligations evidenced by this Deed of Trust, jointly and severally with each other Trustor, and that Beneficiary may pursue any rights and/or remedies set forth in this Deed of Trust either against all Trustors jointly, or against each Trustor on an individual basis, until all such remedies are exhausted and all obligations owed to Beneficiary and secured by this Deed of Trust have been paid and performed in full.

(26) Upon demand by the Beneficiary, the Trustor will pay monthly to the Beneficiary an amount equal to $1/12^{th}$ of the estimated annual cost of taxes, assessments and hazard and other required insurance premiums on the Property. The accumulated funds will be applied by the Beneficiary to the payment of such taxes, assessments and insurance premiums. If there are not sufficient accumulated funds to pay such taxes, assessments and insurance premium as they become due, the Trustor shall, upon demand, immediately pay the amount necessary to make up such deficiency. No interest will be paid on the accumulated funds by the Beneficiary to the Trustor, unless otherwise required by applicable law. Upon an Event of Default, the Beneficiary may apply the accumulated funds to the obligations in whatever order the Beneficiary elects. However, no such application of the accumulated funds shall cure an Event of Default

(27) Notwithstanding the date of execution of this Deed of Trust or the Note secured hereby, the obligations of Trustor to Beneficiary evidenced by this Deed of Trust shall begin to accrue as of the date set forth on the first page of this Deed of Trust.

[the balance of this page intentionally left blank]

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust effective as of 06/27/2013.

DATED this 27th day of June , 2013

Trustor: ATLANTICO PROFESSIONAL SERVICES, LLC
an Arizona limited liability company

By: GUSTAVO RAMIREZ FREER

Its: Member

GUSTAVO RAMIREZ FREER, Member

Irma Murcia, Member

State of _Arizona_ )
                                          ) ss
County of _Maricopa_ )

This instrument was acknowledged before me this 27th day of June , 2013 by Gustavo Ramirez Freer and Irma Murcia as Members of Atlantico Professional Services, LLC, an Arizona limited liability company who acknowledged that he executed the foregoing instrument for the purposes contained therein.

IN WITNESS WHEREOF, I hereunto set my official hand and seal.

Notary Public

My Commission Expires:

OFFICIAL SEAL
GUADALUPE M. PENA
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Nov. 5, 2014

NOTE: The parties are cautioned that by completing and executing this document, legal rights, duties and obligations are created. By signing, the parties acknowledge that they have been advised to seek and obtain independent legal counsel as to all matters contained in the within document prior to signing same and that said parties have obtained advice or choose to proceed without same.

**Exhibit 17**

**November 6, 2013 Notice of Trustee's Sale**

Statewide Foreclosure Services
2530 S. Rural Road
Tempe, AZ 85282

Recorded: 11/06/13

Unofficial
20 Document

31
sa.

## NOTICE OF TRUSTEE'S SALE

### SFS No. 311153

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust recorded on 07/01/13 in Instrument Number 20130603436 in the office of the County Recorder of MARICOPA County, Arizona, at public auction to the highest bidder at Statewide Foreclosure Services Inc., 2530 S. Rural Road, Tempe, Arizona 85282, on 02/05/14, at 11:00 A.M.

Lot 30, KAUFMAN AND BROAD AT THE VINEYARDS, a subdivision recorded in Book 377 of Maps, page 50, and Affidavit of Correction recorded in Document No. 94-0482074, records of Maricopa County, Arizona

**The street address is purported to be**: 4219 North 99th Lane, Phoenix, AZ 85037

**Tax Parcel Number**: 102-82-798

**Original Principal Balance**: $5,124.00

**Name and Address of Beneficiary**: CTP Funding, LLC, an Arizona limited liability company, DBA Capstone Financial, 6900 E. Camelback Road, Suite 575, Scottsdale, AZ 85251

**Name and Address of Original Trustor**: Atlantico Professional Services, LLC, an Arizona limited liability company, 4219 North 99th Lane, Phoenix, AZ 85037

**Name and Address of Trustee**: Statewide Foreclosure Services, Inc., an Arizona corporation, a licensed insurance agent, 2530 S. Rural Road, Tempe, AZ 85282, **SALES INFORMATION** (480) 921-2100 or **www.sfsaz.com Regulator**: Arizona Department of Insurance

**Signature of Successor Trustee**:

STATE OF ARIZONA     )
                    ) ss.
County of   Maricopa    )

STATEWIDE FORECLOSURE SERVICES, INC., a licensed insurance agent

BY: _____
Linda M. Rhodes, President

**Dated**: November 6, 2013

The foregoing instrument was acknowledged before me November 6, 2013, by Linda M. Rhodes, President for Statewide Foreclosure Services, Inc., an Arizona corporation.

LORI PASKASH
Notary Public - Arizona
Maricopa County
My Commission Expires
November 19, 2013

_____
Notary Public

# Exhibit 18

# Special Warranty Deed

Recorded at the request of
when recorded mail to

RANCHO GRANDE LLC
PO BOX 11036
SCOTTSDALE AZ 85271

10:
Ro:

# Special Warranty Deed

For the consideration of Ten Dollars, and other valuable considerations, I or we,
  ATLANTICO PROFESSIONAL SERVICES , A ARIZONA LIMITED LIABILITY COMPANY
do/does hereby convey to

RANCHO GRANDE  a Wyoming Limited Liability Company
the following real property situated in Maricopa, County, Arizona:

**Legal Description**

LOT 30,KAUFMAN AND BROAD AT THE VINEYARDS, A SUBDIVISION RECORDER IN BOOK 377 OF MAPS,PAGE
50,AND AFFIDAVID OF CORRECTION RECORDER IN DOCUMENT NO. 94-0482074 , RECORDS OF MARICOPA
COUNTY ,ARIZONA.

SUBJECT TO:  Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances,
liens, covenants, conditions, restrictions, obligations, and liabilities as may appear of record.

And the Grantor hereby binds itself and its successors to warrant and defend the title, against all acts of the Grantor herein,
and no other, subject to the matters set forth.

Dated: NOVEMBER 12,2013

EXEMPT PER ARS 11-1134

ATLANTICO PROFESSIONAL SERVICES LLC

N/A

STATE OF Arizona
                              SS.
COUNTY OF maricopa

This instrument was acknowledged before me this [ 26th ] day of [ November ], 201 by: gustavo
Ramirez freer
and Irma murcia

My Commission Expires: May 29, 2015

Notary Public

Carol Peralta

"B-7"

CAROL PERALTA
Notary Public - Arizona
Maricopa County
My Comm. Expires May 29, 2015

**Exhibit 19**

**Rancho Grande Document**

Nov. 16, 2013

By Means of This letter all
Alma Adela Lopez Authorize Atlantico
Professional Services to transfer the
following Company Rancho Grande LLC
For Name Change and also in
Agreement to My best interest that al
will Continue to Make Monthly payments
on the following Property 4219 N. 99th Ave
Phoenix AZ 85037-2514

Translated From English
Midi Cerrellano
May 7, 2014

Phoenix, Az. Nov. 16, 2013

Por medio de este escrito yo,
Alma Adela Lopez, estoy auto-
-rizando a Atlantico Professional
Services, otorge el traspaso a
la sig. compañia. _____
Rancho Grande llc _____
Para cambio de nombre y así
convenir a mis intereses y
con esto yo continuaria los
pagos mensuales en la propie-
-dad 4219 N 99th Ln, Phoenix,
Az., 85037-2514.

Alma Lopez                    N/A

November 13. Alma Adela lopez 26th
Carol Peralta
NOTARY PUBLIC



CAROL PERALTA
Notary Public - Arizona
Maricopa County
My Comm. Expires May 29, 2015

**Exhibit 20**

**Camelback Phoenix Partners Money Judgment**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

09
ro

GILBERT BIRD LAW FIRM, PC
10575 North 114th Street, Suite 115
Scottsdale, Arizona 85259

Attn:   Walter H. Gilbert
        Ryan J. Bird

## CAPTION HEADING: <u>DEFAULT JUDGMENT</u>

# DO NOT REMOVE

# This is part of the official document.



**GILBERT BIRD LAW FIRM, PC**
10575 NORTH 114TH STREET, SUITE 115
SCOTTSDALE, ARIZONA 85259
TELEPHONE: (480) 767-6149

CERTIFIED COPY

COPY FOR CERTIFICATION

Ryan J. Bird (022819)
rbird@gilbertbirdlaw.com
Attorneys for Plaintiff

### SUPERIOR COURT OF ARIZONA
### MARICOPA COUNTY

CAMELBACK PHOENIX PARTNERS,
LP, a Delaware limited partnership,

        Plaintiff,

vs.

ATLANTICO PROFESSIONAL
SERVICES, LLC, an Arizona limited
liability company; GUSTAVO RAMIREZ
a/k/a GUSTAVO RAMIREZ FREER, an
individual; IRMA G. MURCIA, an
individual,

        Defendants.

No. CV2013-053251

**DEFAULT JUDGMENT**

(Assigned to Commissioner John Doody)

Unofficial Document

     This matter having come before the Court, and the Court having reviewed the pleadings of record and being fully advised in the premises, finds that Defendants Atlantico Professional Services, LLC, an Arizona limited liability company; Gustavo Ramirez a/k/a Gustavo Ramirez Freer, an individual; and Irma G. Murcia, an individual, were regularly served with process and failed to appear and answer Plaintiff's Complaint within the period prescribed by law, that the default of said Defendants was duly entered by the Clerk of this Court, that said Defendants are neither infant nor incompetent, that there is no just reason for delay for entry of judgment pursuant to Ariz. Civ. Pro. Rule 54(b), and that the Plaintiff is entitled to the relief requested.

     Based upon the foregoing findings, and good cause appearing therefore;

     IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff be awarded judgment against Defendants Atlantico Professional Services, LLC, an Arizona limited liability company; Gustavo Ramirez a/k/a Gustavo Ramirez Freer, an individual; and Irma G. Murcia, an

Page 1

individual, for rent and other charges due under the Lease in the amount of $23,714.02, with interest thereon at the rate of 18% per annum, plus costs in the amount of $542.79, and attorneys' fees in the amount of $2,650.00.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that entry of judgment is without waiver of Plaintiff's right to demand and pursue any amounts found to be due and owing under the terms of the Lease from and after the date of judgment.

DONE IN OPEN COURT this date: _____ 11-13-2013

_____
John Doody
Commissioner of the Superior Court

Unofficial Document

Page 2

Unofficial Document

The foregoing instrument is a full, true and correct copy
of the original on file in this office.

**NOV 1 5 2013**

Attest_____ 20 _____
MICHAEL K. JEANES, Clerk of the Superior Court of the
State of Arizona, in and for the County of Maricopa.

By ___K. Casoose___ Deputy

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

GILBERT BIRD LAW FIRM, PC
10575 North 114th Street, Suite 115
Scottsdale, AZ 85259

Attn:   Walter H. Gilbert
        Ryan J. Bird

## MONETARY JUDGMENT INFORMATION STATEMENT
### A.R.S. §33-967
### Case No. CV-2013-053251

1.   **Debtor Name:** 1. Atlantico Professional Services, LLC, an AZ limited liability company
     2. Gustavo Ramirez a/k/a Gustavo Ramirez Freer, an individual
     3. Irma G. Murcia

2.   **Debtors last known addresses:** 1. c/o Sandra Gamboa, Statutory Agent
     4248 W. Orangewood Ave., Phoenix, AZ 85051
     2. 8944 N. 56th Ave., Glendale, AZ 85302
     3. 8944 N. 56th Ave., Glendale, AZ 85302

3.   **Names and addresses of Judgment Creditor:** Camelback Phoenix Partners, LP, a
     Delaware limited partnership, c/o Gilbert Bird Law Firm, PC, 10575 N. 114th St.,
     Suite 115, Scottsdale, AZ 85259

4.   **Original Amount of the Judgment including interest and costs:** $26,906.81 with
     interest thereon at the rate of eighteen percent (18%) per annum from November 14, 2013
     until paid.

5.   **Judgment Debtors Social Security Nos.:** 1. EIN: 26-3809269
     2. xxx-xx-7454
     3. xxx-xx-8903

6.   **Judgment Debtor's Date of Birth:** 1. N/A
     2. Unknown
     3. Unknown

7.   **Judgment Debtor's Driver's License Number:** 1. N/A
     2. Unknown
     3. Unknown

8.     **Enforcement of the Judgment Has Not Been Stayed.**

9.     **If Stayed, Day, Month and Year Stay Expires:**

**Walter H. Gilbert**
**Ryan J. Bird**
**Gilbert Bird Law Firm, PC**
**10575 North 114th Street, Suite 115**
**Scottsdale, Arizona 85259**
*Attorneys for Judgment Creditor*

Unofficial Document

**Exhibit 21**

**CV2016-017392 Complaint**

MICHAEL K. JEANES
Clerk of the Superior Court
By Ariel Driver, Deputy
Date 11/21/2016 Time 16:24:38
Description                    Amount
------- CASE# CV2016-017392 -------
CIVIL NEW COMPLAINT          319.00 D

TOTAL AMOUNT                   0.00
              Receipt# 25594478

Zachary Dorn, SBN 031018
COMMUNITY LEGAL SERVICES
305 South 2nd Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434, Ext. 2210
(602) 254-3957 FAX
E-Mail: zdorn@clsaz.org
*Attorneys for Plaintiffs*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

ARIEL GUERRERO LOPEZ AND
ALMA LOPEZ, SEPARATELY AND AS
HUSBAND AND WIFE

                    Plaintiffs,

vs.

ATLANTICO PROFESSIONAL
SERVICES, LLC, AN ARIZONA
LIMITTED LIABILITY COMPANY,
GUSTAVO RAMIREZ FREER, AND
JANE DOE FREER, SEPERATELY AND
AS HUSBAND AND WIFE, IRMA G.
MURCIA, AND JOHN DOE MURCIA,
SEPARATELY AND AS HUSBAND
AND WIFE, RANCHO GRANDE, LLC,
A WYOMING LIMITED LIABILITY
COMPANY, AND RUBEN DIAZ AND
JANE DOE DIAZ SEPARETELY AND
AS HUSBAND AND WIFE
                    Defendants.

Case No. CV2016-017392

**VERIFIED COMPLAINT FOR
FOR INJUNCTIVE AND
DECLARATORY RELIEF and
MONETARY DAMAGES**

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

    COMES NOW, Plaintiffs ARIEL GUERRERO LOPEZ and ALMA LOPEZ ("Lopezes"), a married couple, and for their causes of action avers and alleges as follows:

## THE PARTIES

1. Plaintiffs bring this action against Atlantico Professional Services, L.L.C. ("Atlantico"), Gustavo Ramirez Freer ("Mr. Freer"") and Jane Doe Freer ("Ms. Freer"), separately and as husband and wife, and Irma G. Murcia, (Ms. Murcia) and John Doe

- 1 -

Murcia (Mr. Murcia), separately and as husband and wife, Rancho Grande, LLC ("Rancho Grande"), Ruben Diaz (Mr. Diaz) and Jane Doe Diaz (Mrs. Diaz), separately and as husband and wife.

  2. Plaintiffs are both husband and wife who reside in Maricopa County, Arizona.

  3. Plaintiffs owned and resided in 4219 N. 99th Lane, Phoenix, AZ 85037, (the "Property"), the property subject to dispute in this case.

  4. The Subject Property is located in Maricopa County, Arizona.

  5. Defendant Atlantico is an Arizona limited liability company. Its principal place of business is located at 8620 N. Shadow Ln., Peoria, AZ 85345. Atlantico is in the business of selling real property. At all times relevant to the claims asserted herein, Atlantico conducted business in Arizona and caused events to occur in Maricopa County out of which such claims arose.

  6. Defendant Mr. Freer is a resident of the state of Arizona. He is a member of Atlantico. Upon information and belief, Mr. Freer resides at 4740 W. Brown St., Glendale, AZ 85302. At all times relevant to the claims asserted herein, Mr. Freer conducted business in Arizona and caused events to occur in Maricopa County, out of which such claims arose.

  7. At all times relevant to the claims asserted herein, Mr. Freer has never been a licensed real estate professional in the State of Arizona.

  8. Defendant Jane Doe Freer is a resident of the state of Arizona. Jane Doe Freer is a fictitious name used to represent the spouse of Mr. Freer, if applicable. It is believed that Jane Doe Freer resides at 4740 W. Brown St., Glendale, AZ 85302.

  9. All acts and omissions by Mr. Freer were done by, on behalf of, and for the benefit of the marital community.

  10. Defendant Ms. Murcia is a resident of the state of Arizona. She is a member of Atlantico. Upon information and belief, Ms. Murcia resides at 8620 N. Shadow Lane, Peoria, AZ 85345. At all times relevant to the claims asserted herein, Ms. Murcia

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

- 2 -

conducted business in Arizona and caused events to occur in Maricopa County, out of which such claims arose.

11. At all times relevant to the claims asserted herein, Ms. Murcia has never been a licensed real estate professional in the State of Arizona.

12. Defendant John Doe Murcia is a resident of the state of Arizona. John Doe Murcia is a fictitious name used to represent the spouse of Ms. Murica, if applicable. It is believed that John Doe Murcia resides at 8620 N. Shadow Lane, Peoria, AZ 85345.

13. All acts and omissions by Ms. Murcia were done by, on behalf of, and for the benefit of the marital community.

14. Defendant Rancho Grande is a Wyoming limited liability company. Its principal place of business is located at 1621 Central Ave, Cheyenne, WY 82001. Rancho Grande has a local mailing address of P.O. Box 11036, Scottsdale, AZ 85301. Rancho Grande is in the business of selling real property. At all times relevant to the claims asserted herein, Rancho Grande conducted business in Arizona and caused events to occur in Maricopa County out of which such claims arose.

15. Defendant Mr. Diaz is a resident of the state of Arizona. He is the manager of Rancho Grande. It is believed that Mr. Diaz resides at 7401 E. Cambridge, Ave., Scottsdale, AZ 85257. At all times relevant to the claims asserted herein, Mr. Diaz conducted business in Arizona and caused events to occur in Maricopa County, out of which such claims arose.

16. At all times relevant to the claims asserted herein, Mr. Diaz has never been a licensed real estate professional in the State of Arizona.

17. Defendant Jane Doe Diaz is a resident of the state of Arizona. Jane Doe Diaz is a fictitious name used to represent the spouse of Mr. Freer, if applicable. It is believed that Jane Doe Diaz resides at 7401 E. Cambridge Ave., Scottsdale, AZ 85257.

18. All acts and omissions by Mr. Diaz were done by, on behalf of, and for the benefit of the marital community.

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

- 3 -

## JURISDICTION AND VENUE

19. The subject Property is located at 4219 N. 99th Lane, Phoenix, AZ 85037, and legally described as Lot 30, KAUFMAN AND BROAD AT THE VINEYARDS, according to Book 377 of Maps, Page 50, records of Maricopa County, Arizona.

20. Venue is proper because the subject Property is located in Maricopa County. Each defendant has conducted, or continues to conduct, business in Maricopa County. In the instance that any of the defendants reside outside of Maricopa County, venue remains proper as one of the several defendants involved reside in this County.

21. Jurisdiction and venue are proper in Maricopa County, Arizona pursuant to A.R.S § 12-401.

22. This Court has subject matter over the claims.

23. The demand or value of the property in controversy, exclusive of interests or costs, meets the court's jurisdictional limits.

## STATEMENT OF FACTS

24. On September 4, 2001, Loren and Barbara Stafford conveyed the property located at 4219 N. 99th Lane, Phoenix, AZ 85037 (the "Property") to Ariel Lopez. See Warranty Deed attached as Exhibit 1. Alma Lopez disclaimed any interest in the Property. See Disclaimer Deed attached as Exhibit 2.

25. On September 4, 2001, the Lopezes took possession and lived in of the Property.

26. On August 21, 2001 Ariel Guerrero Lopez (as Trustor) signed a Deed of Trust in favor of Concord Mortgage Company (as Beneficiary), an Arizona corporation. See Deed of Trust attached as Exhibit 3.

27. On August 28, 2003, Ariel Guerrero Lopez refinanced by signing (as Trustor) a new Deed of Trust in favor of Bank One, N.A. (as Beneficiary). See Deed of Trust attached as Exhibit 4.

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

- 4 -

28. September 23, 2005, Ariel Guerrero Lopez refinanced by signing (as Trustor) a new Deed of Trust in favor of World Savings Bank, FSB (as Beneficiary). See Deed of Trust attached as Exhibit 5.

29. June 10, 2009, Beneficiary caused to be recorded a Notice of Trustee's Sale for a sale on September 10, 2009. See Notice of Trustee's Sale attached as Exhibit 6.

30. September 1, 2009, Trustee's Sale was canceled. See Cancellation of Trustee's Sale attached as Exhibit 7.

31. February 7, 2012, Trustee recorded a second Notice of Trustee's Sale for May 10, 2012. See Notice of Trustee's Sale attached as Exhibit 8.

32. In May 2012, Atlantico approached Plaintiffs with an offer to assist them in saving their home from foreclosure.

33. Plaintiffs and Atlantico reached a verbal agreement where Plaintiffs would short sell the Property to Atlantico, Atlantico would cause the pending Trustee's Sale to be cancelled, and then Plaintiffs would repurchase the Property from Atlantico. Plaintiffs and Atlantico agreed to execute a written agreement to formalize the verbal agreement. The written Real Estate Purchase Contract was signed on August 17, 2012. See Real Estate Purchase Contact ("Purchase Contract") attached as Exhibit 9; see also *infra* ¶ 38.

34. Pursuant to the above referenced verbal agreement, Plaintiffs short sold the Property to Atlantico. July 13, 2012, Wells Fargo (as successor to World Savings Bank, FSB) approved the short sale (see Short Sale Approval attached as Exhibit 10), and the short sale was completed. See Warranty Deed from July 31, 2012 attached as Exhibit 11; see also HUD-1 Statement attached as Exhibit 12.

35. Pursuant to the Purchase Contract, on July 30, 2012, Plaintiffs paid Atlantico twenty thousand four hundred dollars ($20,400.00).

36. On or about July 30, 2012 Plaintiffs commenced monthly payments to Atlantico under the Purchase Contract.

37. July 31, 2012, Atlantico (as Trustor) signs Deed of Trust in favor of David and Sharon Pace 1999 Revocable Living Trust dated June 25, 1999 (as Beneficiary) for

- 5 -

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

1    fifty-three thousand dollars ($53,000.00). See Deed of Trust attached as Exhibit 13. This

2    transaction was never discussed with or disclosed to the Plaintiffs.

3          38. Pursuant to the above referenced verbal agreement, on August 17, 2012,

4    Alma Lopez (as Buyer) signed a Real Estate Purchase Contract with Atlantico (as Seller).

5    The Purchase Contract was prepared by Atlantico. The purchase contract provided for a

6    twenty thousand four hundred dollar ($20,400.00) down payment with seller carryback

7    financing for forty seven thousand six hundred dollars ($47,600.00). See Real Estate

8    Purchase Contract attached as Exhibit 9.

9          39. June 27, 2013, Atlantico (as Trustor) refinanced the July 31, 2012 Deed of

10    Trust by signing two Deeds of Trust in favor of CTP Funding, LLC (as Beneficiary), an

11    Arizona limited liability company. One Deed of Trust was for fifty nine thousand, five

12    hundred dollars ($59,500.00). See Deed of Trust attached as Exhibit 14. The second

13    Deed of Trust was for five thousand, one hundred and twenty four dollars ($5,124.00).

14    See Deed of Trust attached as Exhibit 15. These transactions were never discussed with

15    or disclosed to the Plaintiffs.

16          40. Plaintiffs continued to make monthly payments to Atlantico under the

17    Purchase Contract. However, Atlantico did not make payments to CTP Funding, LLC on

18    the Deeds of Trust.

19          41. November 6, 2013, Beneficiary CTP Funding, LLC caused to be recorded

20    Notice of Trustee's Sale pursuant to second Deed of Trust for $5,124.00. See Notice of

21    Trustee's Sale attached as Exhibit 16.

22          42. After the Notice of Trustee's Sale was recorded Plaintiffs were approached

23    by Ruben Diaz of Rancho Grande.

24          43. Mr. Diaz verbally represented he could help prevent the foreclosure of the

25    Property if the Lopezes paid Rancho Grande three thousand dollars.

26          44. The Lopezes paid Rancho Grande three thousand dollars ($3,000.00).

27

28

- 6 -

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue,
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

45. November 12, 2013, Atlantico conveyed the Property to Rancho Grande for ten dollars and other valuable consideration. See Special Warranty Deed attached as Exhibit 17.

46. November 13, 2013, Alma Lopez signed a one page document that purported to authorize Atlantico to convey title to Rancho Grande and assign the agreement between the Lopezes and Atlantico to Rancho Grande. See Rancho Grande Document attached as Exhibit 18.

47. November 13, 2013, Camelback Phoenix Partners LP obtained a money judgment Atlantico. See Money Judgment attached as Exhibit 19.

48. February 7, 2014, the Property was sold at the Trustee's Sale pursuant to June 27, 2013 Deed of Trust. See Exhibit 20.

49. At the time of the Trustee's Sale, the approximate value of Property was one hundred forty-four thousand dollars ($144,000.00).

50. March 17, 2014, Statewide Foreclosure Services (as Trustee) filed an excess proceeds case in the Superior Court of Maricopa County (case number CV2014-052632) pursuant to A.R.S. § 33-812 and deposited twenty-six thousand, four hundred and seventy-two dollars ($26,472.00) with the Maricopa County Treasurer.

51. March 28, 2014, Camelback Phoenix Partners filed an Application for Distribution of Excess Proceeds.

52. May 19, 2014, Lopezes filed a Response to Application for Release of Excess Proceeds.

53. On December 11, 2014. Lopezes and Camelback Phoenix Partners reached a settlement agreement to divide the excess proceeds. The Lopezes received fourteen thousand, two hundred and thirty-six dollars and eight-five cents ($14,236.85) with the remaining balance going to Camelback Phoenix Partners.

- 7 -

# FIRST CAUSE OF ACTION

## [Common Law Fraud—Defendants Atlantico, Mr. and Mrs. Freer, and Mr. and Mrs. Murcia]

54. Plaintiffs allege and incorporate by reference all previous allegations in this Complaint.

55. Defendant Atlantico represented to Plaintiffs that they would be purchasing the property subject only to Atlantico's seller carryback mortgage.

56. Defendant Atlantico orally represented to Plaintiffs that they would receive title after one year of payments.

57. Based on the above referenced representations, Plaintiffs conveyed the Property to Atlantico and signed a Contract to repurchase the Property from Atlantico.

58. Defendants failed to disclose the existence of the CTP Funding, LLC deeds of trust.

59. Defendants failed to make payments on the CTP Funding, LLC deeds of trust.

60. Defendants' representations and omissions were false material representation to the Plaintiffs.

61. Defendants knew that its representations and omissions were false.

62. Defendants intended for the Plaintiffs to act on the false and material representations and omissions by entering into the Contract.

63. The Plaintiffs were not aware that the Defendants' material representations and omissions were false.

64. Plaintiffs rightfully relied on the Defendants' false and material representations and omissions as was reasonably contemplated by the Defendant.

65. As a result of Plaintiffs' reliance on Defendants' false and material representations and omissions, Plaintiffs sustained damages.

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

- 8 -

## SECOND CAUSE OF ACTION

**[Breach of Contract—Defendants Atlantico, Mr. and Mrs. Freer, and Mr. and Mrs. Murcia]**

66. Plaintiffs allege and incorporate by reference all previous allegations in this Complaint.

67. The Plaintiffs and Atlantico have a written contract.

68. The Plaintiffs performed all of their obligations pursuant to the terms of the parties' contract.

69. Atlantico had an obligation to convey clear title under the Contract.

70. Atlantico had an obligation to prevent the Property from being foreclosed on.

71. Defendant Atlantico failed to convey the Property to the Plaintiffs as promised.

72. Atlantico encumbered the property with the CTP Funding, L.L.C. Deeds of Trust, without informing Plaintiffs.

73. Upon information and belief, Atlantico did not make payments on the CTP Funding, L.L.C. Deeds of Trust with the result that the property was sold at a Trustee Sale on February 7, 2014.

74. Defendants breached the parties' Contract by failing to stop the foreclosure of the Property, by encumbering the property, by defaulting on the CTP Funding, L.L.C. Deeds of Trust and by failing to convey the Property back to the Plaintiffs.

75. Plaintiffs suffered economic loss, and continues to suffer economic loss because of Defendant's breach of the Contract.

76. Plaintiffs are entitled to damages for Defendants' breach of the Contract.

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

## THIRD CAUSE OF ACTION

### [Breach of Implied Covenant of Good Faith and Fair Dealing-- Defendants Atlantico, Mr. and Mrs. Freer, and Mr. and Mrs. Murcia]

77. Plaintiffs allege and incorporate by reference all previous allegations in this Complaint.

78. There is an implied covenant of good faith and fair dealing in the Contract.

79. Defendants breached the covenant of good faith and fair dealing by not disclosing CTP Funding's interest in the Property, by failing to pay on the CTP Funding DOT and by failing to convey title to the Property.

80. Plaintiffs suffered economic loss and continue to suffer economic loss because of Defendants' breach of the covenant of good faith and fair dealing.

81. Plaintiff is entitled to damages for Defendants' breach of the covenant of good faith and fair dealing.

## FOURTH CAUSE OF ACTION

### [Arizona Consumer Fraud---- Defendants Atlantico, Mr. and Mrs. Freer, and Mr. and Mrs. Murcia]

82. Plaintiffs allege and incorporate by reference all previous allegations in this Complaint.

83. The act, use of employment by any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that other rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice under Arizona state law.

- 10 -

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

84. Defendants Atlantico, Mr. and Mrs. Freer, and Mr. and Mrs. Murcia did not disclose the Atlantico's deeds of trust and made false representations regarding conveying title back to the Plaintiffs.

85. Defendants' deceptive acts and practices, fraud, false pretense, false promises, and misrepresentations were made in connection with the sale and advertisement of merchandise, as defined in A.R.S. § 44-1521.

86. Defendants intended for Plaintiffs to rely on their deceptive acts and practices, false pretense, false promises, and misrepresentations, and Plaintiffs reasonably relied on same, and in so doing, Defendants violated A.R.S. § 44-1522.

87. Plaintiff relied upon Defendants' deceptive acts and practices, false pretenses, false promises, and misrepresentations as alleged above.

88. Defendants' acts and omissions and Plaintiffs' reasonable reliance has proximately caused damages to Plaintiffs including, but not limited, the amount of the down payment, monthly mortgage payments made, the cost of renovations of the property by the Plaintiffs, and the loss of equity. Plaintiffs are entitled to damages resulting from these acts, in an amount to be proved at trial.

## FIFTH CAUSE OF ACTION

### [Negligent misrepresentation— Defendants Atlantico, Mr. and Mrs. Freer, and Mr. and Mrs. Murcia]

89. Plaintiffs allege and incorporate by reference all previous allegations in this Complaint.

90. Defendants misrepresented it was going to save the home from foreclosure and failed to disclose to Plaintiffs that the Property was subject to the CTP Funding, L.L.C deeds of trust.

91. Defendants' representations to Plaintiffs were false and Plaintiff could not have reasonably known that the representations made by the Defendant were false.

- 11 -

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

92. Plaintiffs relied on Defendants' representations.

93. Plaintiffs have been damaged by relying on Defendants' representations in an amount to be proved at trial.

## SIXTH CAUSE OF ACTION

### [Foreclosure Consultant Act— Defendants Atlantico, Mr. and Mrs. Freer, and Mr. and Mrs. Murcia]

94. Plaintiffs allege and incorporate by reference all previous allegations in this Complaint.

95. Atlantico and/or Mr. and Mrs. Freer and Mr. and Mrs. Murcia's acts and omissions as set forth above violate A.R.S. § 44-1378.02(1), (2), (3) and (5) and A.R.S. § 44-1378.06.

96. Atlantico and/or Mr. and Mrs. Freer and Mr. and Mrs. Murcia failed to comply with the requirements for a foreclosure consulting contract as set forth in A.R.S. § 44-1378.03.

## SEVENTH CAUSE OF ACTION

### [Breach of Contract—Defendants Rancho Grande and Mr. and Mrs. Diaz]

97. Plaintiffs allege and incorporate by reference all previous allegations in this Complaint.

98. The Plaintiffs and Rancho Grande have a verbal contract.

99. The Plaintiffs performed all of their obligations pursuant to the terms of the parties' contract.

100. Rancho Grande had an obligation to convey clear title under the Contract.

101. Rancho had an obligation to prevent the Property from being foreclosed on.

102. Defendant Rancho Grande failed to convey the Property to the Plaintiffs as promised.

- 12 -

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

103. Upon information and belief, Rancho Grande did not make payments on the CTP Funding, L.L.C. Deeds of Trust with the result that the property was sold at a Trustee Sale on February 7, 2014.

104. Defendants breached the parties' contract by failing to stop the foreclosure of the Property, by defaulting on the CTP Funding, L.L.C. Deeds of Trust and by failing to convey the Property back to the Plaintiffs.

105. Plaintiffs suffered economic loss and continues to suffer economic loss because of Defendant's breach of the contract.

106. Plaintiffs are entitled to damages for Defendants' breach of the contract.

## EIGHTH CAUSE OF ACTION

### [Breach of Implied Covenant of Good Faith and Fair Dealing--Defendants Rancho Grande and Mr. and Mrs. Diaz]

107. Plaintiffs allege and incorporate by reference all previous allegations in this Complaint.

108. There is an implied covenant of good faith and fair dealing in the verbal contract.

109. Defendants breached the covenant of good faith and fair dealing by not disclosing CTP Funding's interest in the Property, by failing to pay on the CTP Funding DOT and by failing to convey title to the Property.

110. Plaintiffs suffered economic loss and continue to suffer economic loss because of Defendants' breach of the covenant of good faith and fair dealing.

111. Plaintiff is entitled to damages for Defendants' breach of the covenant of good faith and fair dealing.

- 13 -

## NINETH CAUSE OF ACTION

### [Common Law Fraud—Defendants Rancho Grande and Mr. and Mrs. Diaz]

112. Plaintiffs allege and incorporate by reference all previous allegations in this Complaint.

113. Defendants represented to Plaintiffs that they would act to prevent the foreclosure of the property.

114. Defendants orally represented to Plaintiffs that they would receive title after entering into the contract.

115. Defendants represented that they would prevent the foreclosure of the Property.

116. Based on the above referenced representations, Plaintiffs entered into a verbal agreement with Defendants.

117. Based on the above referenced representations, Plaintiffs paid Defendants three thousand dollars ($3,000.00).

118. Defendants failed prevent the foreclosure of the Property.

119. Defendants' representations and omissions as set forth below were false, material representation to the Plaintiffs.

120. Defendants knew that its representations and omissions were false.

121. Defendants intended for the Plaintiffs to act on the false and material representations and omissions by entering into the Contract.

122. The Plaintiffs were not aware that the Defendants' material representations and omissions were false.

123. Plaintiffs rightfully relied on the Defendants' false and material representations and omissions as was reasonably contemplated by the Defendant.

124. As a result of Plaintiffs' reliance on Defendants' false and material representations and omissions, Plaintiffs sustained damages.

- 14 -

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE - HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

# TENTH CAUSE OF ACTION

**[Arizona Consumer Fraud—— Defendants Rancho Grande and Mr. and Mrs. Diaz]**

125. Plaintiffs allege and incorporate by reference all previous allegations in this Complaint.

126. The act, use of employment by any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that other rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice under Arizona state law.

127. Defendants Rancho Grande and Mr. and Mrs. Diaz represented to the Plaintiffs that the Defendants would act to prevent the foreclosure of the Property.

128. Defendants Rancho Grande and Mr. and Mrs. Diaz accepted three thousand dollars ($3,000) from the Plaintiffs, but did not prevent the foreclosure of the Property.

129. Defendants' deceptive acts and practices, fraud, false pretense, false promises, and misrepresentations were made in connection with the sale and advertisement of merchandise, as defined in A.R.S. § 44-1521.

130. Defendants intended for Plaintiffs to rely on their deceptive acts and practices, false pretense, false promises, and misrepresentations, and Plaintiffs reasonably relied on same, and in so doing, Defendants violated A.R.S. § 44-1522.

131. Plaintiff relied upon Defendants' deceptive acts and practices, false pretenses, false promises, and misrepresentations as alleged above.

132. Defendants' acts and omissions and Plaintiffs' reasonable reliance has proximately caused damages to Plaintiffs including, but not limited, the amount of the down payment, monthly mortgage payments made, and the cost of renovations of the property by the Plaintiffs. Plaintiffs are entitled to damages resulting from these acts, in an amount to be proved at trial.

- 15 -

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

## ELEVENTH CAUSE OF ACTION

**[Negligent misrepresentation— Defendants Rancho Grande and Mr. and Mrs. Diaz]**

133. Plaintiffs allege and incorporate by reference all previous allegations in this Complaint.

134. Defendants failed to disclose to Plaintiffs that the Property was already subject to the EZ Lending DOT.

135. Defendants' representations to Plaintiffs were false and Plaintiff could not have reasonably known that the representations made by the Defendant were false.

136. Plaintiffs relied on Defendants' representations.

137. Plaintiffs have been damaged by relying on Defendants' representations in an amount to be proved at trial.

## TWELFTH CAUSE OF ACTION

**[Foreclosure Consultant Act— Defendants Rancho Grande and Mr. and Mrs. Diaz]**

138. Plaintiffs allege and incorporate by reference all previous allegations in this Complaint.

139. Rancho Grande and/or Mr. and Mrs. Diaz's acts and omissions as set forth above violate A.R.S. § 44-1378.02(1), (2), (3) and (5) and A.R.S. §44-1378.06.

140. Rancho Grande and/or Mr. and Mrs. Diaz failed to comply with the requirements for a foreclosure consulting contract as set forth in A.R.S. § 44-1378.03

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for relief as follows:

1. As to Defendants Atlantico; Mr. and Mrs. Freer; and Mr. and Mrs. Murcia:

    a. For punitive and actual damages, for the fraud, misrepresentation, and violations of the Arizona Consumer Fraud Act with interest thereon at the rate prescribed by statute from the date of judgment until paid in full;

- 16 -

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

b. For punitive and actual damages for violations of the Arizona Foreclosure Consultant Act with interest thereon at the rate prescribed by statute from the date of judgment until paid in full;

c. For compensatory damages for Defendants breach of contract with interest thereon at the rate prescribed by statute from the date of judgment until paid in full;

d. That this Court award Plaintiffs reasonable attorney fees and costs pursuant to, A.R.S. §§ 12-341.01, 12-341, and 44-1378.05 with interest thereon at the rate prescribed by statute from the date of judgment until paid in full;

e. That this Court award the Plaintiffs their attorney fees in the amount of seven thousand five hundred dollars ($7,500.00) pursuant to Ariz. R. Civ. P. Rule 55 if Defendants fails to file an Answer or other responsive pleading, with interest thereon at the statutory rate from date of judgment until paid in full;

f. For such other and further relief as this Court deems just and proper.

2. As to Defendant Rancho Grande, L.L.C. and Mr. and Mrs. Diaz:

a. For punitive and actual damages for the fraud and misrepresentation, and violations of the Arizona Consumer Fraud Act with interest thereon at the rate prescribed by statute from the date of judgment until paid in full;

b. For punitive and actual damages for violations of the Arizona Foreclosure Consultant Act with interest thereon at the rate prescribed by statute from the date of judgment until paid in full;

c. For compensatory damages for Defendants breach of contract with interest thereon at the rate prescribed by statute from the date of judgment until paid in full;

d. That this Court award Plaintiffs reasonable attorney fees and costs pursuant to A.R.S. §§ 12-341.01, 12-341, and 44-1378.05 with interest thereon at the rate prescribed by statute from the date of judgment until paid in full;

- 17 -

e. That this Court award the Plaintiffs their attorney fees in the amount of seven thousand five hundred dollars ($7,500.00) pursuant to Ariz. R. Civ. P. Rule 55 if Defendants fails to file an Answer or other responsive pleading, with interest thereon at the statutory rate from date of judgment until paid in full;

f. For such other and further relief as this Court deems just and proper.

DATED this 21 day of November 2016.

COMMUNITY LEGAL SERVICES

By _____
Zachary Dorn
*Attorney for Plaintiffs*

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

- 18 -

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

## VERIFICATION

STATE OF ARIZONA )
                 ) ss.
County of Maricopa )

    **ARIEL GUERRERO LOPEZ**, being first duly sworn upon her oath, deposes and says:

    That he is the plaintiff in the above entitled and numbered action; that he has read the foregoing Complaint attached to this Verification and knows the contents thereof; that all of the allegations therein contained are true in substance and in fact to the best of his knowledge, except as to those matters alleged upon information and belief, and, as to those matters, he believes them to be true.

DATED: _____      
                                   Ariel Guerrero Lopez

    **SUBSCRIBED AND SWORN** to before me this 21ᵖ day of Navember 2016, by **ARIEL GUERRERO LOPEZ**.

Commission Expiration Date/Seal: _____

                          Notary Public

> OFFICIAL SEAL
> RICHARD CORY RADE
> Notary Public - State of Arizona
> MARICOPA COUNTY
> My Comm. Expires Oct. 10, 2018

    I certify that I am fluent in Spanish and English and that I have truly and correctly translated the attached Verification from English to Spanish to the best of my ability to the above individual.

    Dated this _____ day of November, 2016.

                    Signature: _Maria D Fulgencio_
                    Name: _Maria G. Fulgencio_

**SUBSCRIBED AND SWORN** to before me this 21ᵖ day of Navember 2016, by ~~ARIEL GUERRERO LOPEZ~~ Maria Fulgencio

Commission Expiration Date/Seal: 

> OFFICIAL SEAL
> RICHARD CORY RADE
> Notary Public - State of Arizona
> MARICOPA COUNTY
> My Comm. Expires Oct. 10, 2018

                         Notary Public

VERIFICATION

STATE OF ARIZONA )
                 ) ss.
County of Maricopa )

    **ALMA LOPEZ**, being first duly sworn upon her oath, deposes and says:

    That she is the plaintiff in the above entitled and numbered action; that she has read the foregoing Complaint; attached to this Verification and knows the contents thereof; that all of the allegations therein contained are true in substance and in fact to the best of her knowledge, except as to those matters alleged upon information and belief; and, as to those matters, she believes them to be true.

DATED:_____     *Alma Lopez*
                     Alma Lopez

    **SUBSCRIBED AND SWORN** to before me this 21$^{2T}$ day of November 2016, by **ALMA LOPEZ**.

Commission Expiration Date/Seal: _____ Notary Public

> OFFICIAL SEAL
> RICHARD CORY RADE
> Notary Public - State of Arizona
> MARICOPA COUNTY
> My Comm. Expires Oct. 10, 2018

    I certify that I am fluent in Spanish and English and that I have truly and correctly translated the attached Verification from English to Spanish to the best of my ability to the above individual.

    Dated this _____ day of November, 2016.

Signature: *Maria G. Fulgencio*
Name: Maria G. Fulgencio

**SUBSCRIBED AND SWORN** to before me this 21 day of November 2016, by ~~ALMA LOPEZ~~ Maria Fulgencio.

Commission Expiration Date/Seal: _____ Notary Public

> OFFICIAL SEAL
> RICHARD CORY RADE
> Notary Public - State of Arizona
> MARICOPA COUNTY
> My Comm. Expires Oct. 10, 2018

COMMUNITY LEGAL SERVICES
CENTRAL OFFICE • HOUSING UNIT
305 South Second Avenue
Phoenix, Arizona 85003-2402
(602) 258-3434 • FAX (602) 254-3957 • TDD (602) 254-9852

- 20 -